IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 7, 2004 Session

## SHAMERY BLAIR and TITUS BLAIR v. WEST TOWN MALL

**Appeal by permission from the Court of Appeals**
**Circuit Court for Knox County**
No. 1-229-00     Dale C. Workman, Judge

---

**No. E2002-02005-SC-R11-CV - Filed March 11, 2004**

---

We granted permission to appeal in this case to determine whether the Court of Appeals erred in reversing the trial court's judgment granting summary judgment for Defendant. In resolving this issue, we must also determine whether Tennessee recognizes the "method of operation" theory in premises liability cases and whether Plaintiff's reliance upon that theory is appropriate, as a matter of law, in this case. We hold that plaintiffs in premises liability cases in Tennessee may attempt to establish constructive notice of the presence of a dangerous condition by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence. This theory is available to Plaintiff in this case to pursue at trial. Because Defendant in this case failed to affirmatively negate an essential element of Plaintiff's claim or conclusively establish an affirmative defense, Plaintiff's burden to produce evidence establishing the existence of a genuine issue for trial was not triggered. Thus, the judgment of the Court of Appeals reversing the trial court's grant of summary judgment is affirmed. Accordingly, the judgment of the Court of Appeals is affirmed in part and modified in part, and this case is remanded to the trial court.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Affirmed in Part; Modified in Part; and Remanded to the Trial Court**

FRANK F. DROWOTA, III, C. J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Howard E. Jarvis and Stephanie K. Hunt, Knoxville, Tennessee, for the appellants, West Town Mall.

James A. H. Bell and Richard L. Burnette, Knoxville, Tennessee, for the appellees, Shamery

Blair and Titus Blair.

## OPINION

### Factual and Procedural Background

Shamery Blair ("Plaintiff") sued West Town Mall ("Defendant") after she slipped and fell on slick oil spots as she exited the mall. Plaintiff alleged that Defendant, as owner of the premises, failed to exercise ordinary care in maintaining its premises in a condition safe for customers. Plaintiff claimed that Defendant failed to inspect and maintain the pavement in the parking lot in a reasonably safe condition and alternatively, that Defendant knew that buses dropped off customers at the area where she fell, that Defendant knew or should have known of the oil spots, and that Defendant failed to remove them.

Defendant filed a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56, arguing that Plaintiff had no evidence to show that Defendant had actual or constructive notice of the alleged dangerous condition. In support of this motion, Defendant relied on Plaintiff's deposition testimony that: 1) prior to the accident, she never had difficulty entering or leaving the mall and had never seen anything on the roadway, 2) she did not notice any slippery substances as she was walking at the time of the accident, 3) she did not know how long the substance had been there, where it came from, or if anyone at the mall knew it was there, and 4) she did not know if anyone at the mall had an opportunity to do anything about the substance prior to the accident. Defendant did not file an affidavit in support of the motion or present any other evidence. Plaintiff filed a response to the summary judgment motion, arguing that Defendant had constructive notice of the dangerous condition because of Defendant's method of operation. In particular Plaintiff's response stated:

> The Defendant allows, or fails to prohibit, both commercial and private vehicles to stop outside of these primary entrance/exits to load and unload passengers and/or merchandise purchased at the Mall. Clearly, it is foreseeable that these vehicles will from time to time leak engine fluids that could cause a pedestrian to fall and sustain injury.

Plaintiff also submitted an affidavit from an automobile service consultant which alleged that motor vehicles commonly leak engine fluids when slowing down or stopping and that such leaks can create slick surfaces. Plaintiff also submitted two photographs of the area where the accident occurred.

The trial court granted summary judgment to Defendant, concluding that the parking lot was not part of Defendant's method of operation. Plaintiff appealed. The Court of Appeals reversed the grant of summary judgment in a three part opinion, with each judge writing separately. All judges agreed that the materials filed by Defendant in support of its motion for summary judgment were insufficient to negate an element of Plaintiff's claim, the element of notice; therefore summary judgment was not appropriate. The lead opinion, filed by Judge Swiney, "express[ed] no opinion

on whether Defendant's parking lot constitutes a part of its method of operation." Judges Goddard and Susano agreed that summary judgment was not appropriate but wrote separately to state that the parking lot in this case could not possibly be considered part of Defendant's method of operation. Thus, the Court of Appeals unanimously reversed the grant of summary judgment, but a majority, two judges, concluded that Plaintiff's reliance upon the method of operation theory was misplaced. Defendant filed an application for permission to appeal in this Court, and the application was granted.

## Standard of Review

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tennesee Rule of Civil Procedure 56 have been met. See Staples v. CBL & Assoc., Inc., 15 S.W.3d 83, 88 (Tenn. 2000); Hunter v. Brown, 955 S.W.2d 49, 50-51 (Tenn. 1997); Cowden v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: 1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and 2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. Staples, 15 S.W.3d at 88.

## Analysis

### *Constructive Notice*

We begin by clarifying the general application of the method of operation theory in premises liability cases in Tennessee and the application of that theory to this particular case.

Business proprietors are not insurers of their patrons' safety. However, they are required to use due care under all the circumstances. Martin v. Washmaster Auto Ctr., U.S.A, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996). "Liability in premises liability cases stems from superior knowledge of the condition of the premises." McCormick v. Waters, 594 S.W.2d 385, 387 (Tenn. 1980). In order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: 1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident. Martin v. Washmaster Auto Center, U.S.A, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996) (citing Ogle v. Winn-Dixie Greenville, Inc., 919 S.W.2d 45, 47 (Tenn. App. 1995); Jones v. Zayre, Inc., 600 S.W.2d 730 ,732 (Tenn. App. 1980)). We have previously held that constructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition. Simmons v. Sears, Roebuck & Co., 713 S.W.2d 640, 641 (Tenn. 1986).

In this case, Plaintiff attempts to prove constructive notice through a theory Plaintiff calls method of operation. Plaintiff alleges that Defendant had constructive notice based on the recurrence

of the condition, which Plaintiff alleges results from Defendant's method of operation. While this Court has never expressly considered whether the method of operation theory can be relied upon to satisfy the above requirements, the Court of Appeals has considered this issue and has adopted two distinct approaches.

The first line of cases is based on the idea that the premises owner's method of operating the business indirectly resulted in creation of the dangerous condition, although the acts of third parties also contributed to its creation. Therefore, notice need not be shown. This approach to the method of operation theory is exemplified in Hale v. Blue Boar Cafeteria Co., No. 22, 1980 WL 150173 (Tenn. Ct. App. Feb. 21, 1980). The plaintiff in Blue Boar slipped and fell on water that had been spilled in the self-service beverage area of a cafeteria. The plaintiff claimed that the dangerous condition was created by the method in which the cafeteria chose to conduct its business - the self-service method of providing beverages. The Court of Appeals observed:

> It appears logical not to require notice of a hazardous situation created by the method in which the proprietor chose to operate its business . . . In these situations, the questions are: 1) whether the condition created by the chosen method of operation constitutes a hazardous situation reasonably foreseeable to others, 2) whether the proprietor used reasonable and ordinary care toward its invitees under those circumstances, and 3) whether the condition created was the direct and proximate cause of the plaintiff's injury.

Id. at *4.

More recently, this approach to the method of operation theory was applied in Trebing v. Fleming Cos., 40 S.W.3d 42 (Tenn. Ct. App. 2000). Trebing involved a slip and fall in the entrance to a grocery store, in an area where water had blown into the store from a rainstorm. Plaintiff relied on method of operation, which the court said, "requires a showing that the pooling of water was created by a method of operation chosen by MegaMarket." Id. at 46-47. Trebing also listed the three factors from Blue Boar as the guiding principles in determining whether the theory applied.

In a separate line of cases, the Court of Appeals has indicated that the method of operation theory may be relied upon as a means of proving constructive knowledge. Under this analysis, plaintiffs need not prove the length of time that the specific condition existed. "[T]his Court has begun to articulate the [m]ethod of [o]peration theory in terms of constructive notice. . . . More recent cases have focused almost entirely on whether there is a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence." Martin, 946 S.W.2d at 320.

Another case that followed this approach (although without using the phrase "method of operation") arose when the plaintiff slipped on water on the pavement near a turnstile at an amusement park ride. Beske v. Opryland USA, Inc., 923 S.W.2d 544, 546 (Tenn. Ct. App. 1996). Evidence was introduced that some beverages were simply thrown on the ground or walkway

4

because they were not allowed on the ride, that management was aware that spilled beverages were common in the area, and that nearby employees cleaned up the spills if they were not too busy. Id. The Court of Appeals held that constructive notice had been established because "there is evidence of the recurrent problem of discarded beverages in the area . . . ." Id.

Having fully considered these differing approaches, we reject the analysis applied in Blue Boar and Trebing. The factors enunciated in those cases are not particularly useful because two of the three simply duplicate elements that are already part of a negligence claim - breach of duty and causation. These elements of method of operation do not add anything to the analysis of premises liability cases. In fact, they muddy the inquiry into the question at hand - whether the premises owner either created or had actual or constructive notice of the dangerous condition.

In addition, the Blue Boar - Trebing analysis is not easily applied in most circumstances. For example, the theory does not indicate how closely a dangerous condition must be linked to the business activity in order for the condition to be considered created by the method of operation? Put another way, how attenuated may the relationship between the condition and the business activity be and still have the method of operation theory apply? How great a role can the intervening acts of third parties play?

We take this opportunity to hold that in Tennessee, plaintiffs may prove that a premises owner had constructive notice of the presence of a dangerous condition by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence. This approach focuses directly on a principle firmly established in our case law - that a premises owner's duty to remedy a condition, not directly created by the owner, is based on that owner's actual or constructive knowledge of the existence of the condition. It simply recognizes the logical conclusion that, when a dangerous condition occurs regularly, the premises owner is on constructive notice of the condition's existence. This places a duty on that owner to take reasonable steps to remedy this commonly occurring dangerous condition.

Allowing plaintiffs to prove constructive notice in this manner relieves plaintiffs of the difficult burden of showing the duration of a particular occurrence so long as plaintiffs can show that the dangerous condition was part of "a pattern of conduct, a recurring incident, or a general or continuing condition" such that its presence was reasonably foreseeable to the premises owner.[1]

Method of operation is not a useful title for this theory. The term method of operation suggests that the owner's method of operation, or way of doing business, is a part of the inquiry. But under the theory we now adopt, the owner's way of doing business is not determinative. The question is whether the condition occurs so often that the premises owner is put on constructive notice of its existence. The condition could be caused by the owner's method of operation, by a third

---

[1]We wish to note that constructive notice can still be shown by proving that the particular dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition.

5

party, or by natural forces. A premises owner is put on constructive notice of a dangerous condition that is "a recurring incident, or a general or continuing condition" regardless of what caused the condition, and regardless of whatever method of operation the owner employs. Certainly there will be cases where the method of operation chosen by the owner creates a dangerous recurring condition. But there is no logical reason to impute constructive notice only in those cases where the condition can be linked to the owner's business activities, so long as a plaintiff can show that the condition was a "recurring incident or general or continuing condition."

Our holding here is not novel. We have previously recognized the basic idea that a past history of a recurring event or condition makes that event or condition foreseeable. We applied this concept to a negligence claim against a mall for failure to provide security against the criminal acts of third parties:

> After careful consideration of the jurisprudence of other jurisdictions and our own, we adopt the following principles to be used in determining the duty of care owed by the owners and occupiers of business premises to customers to protect them against the criminal acts of third parties: A business ordinarily has no duty to protect customers from the criminal acts of third parties which occur on its premises. The business is not to be regarded as the insurer of the safety of its customers, and it has no absolute duty to implement security measures for the protection of its customers. However, *a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.*

McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 902 (Tenn. 1996)(emphasis added).

We express no opinion as to whether Defendant in this case had constructive notice of the dangerous condition alleged by Plaintiff. Sufficient facts are not present in this record to determine whether the slick spot in the area of the parking lot where Plaintiff fell was part of a pattern of conduct, a recurring incident, or a general or continuing condition indicating the slick spot's existence.

*Summary Judgment Burdens*

Defendant argues that the Court of Appeals incorrectly analyzed each party's burden of proof for a summary judgment motion. Defendant's position is that Tennessee Rule of Civil Procedure 56 places a burden on Plaintiff to establish a prima facie case of negligence, and that in order to avoid summary judgment, Plaintiff must present proof of actual or constructive notice, an essential element of a premises liability case. According to this argument, Defendant need not "affirmatively negate" an element of Plaintiff's claim in order for Plaintiff to have the burden of producing some

proof on the element, and it is enough for the Defendant to demonstrate that Plaintiff has not produced any evidence on that element.

Defendant overlooks Tennessee case law that makes clear what burden is placed on each party in a motion for summary judgment. A series of decisions from this Court has addressed the burden-shifting framework to be applied, most recently Staples v. CBL & Assoc., Inc.:

> When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.
>
> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

Staples, 15 S.W.3d at 88-89 (citations omitted).

The analysis and facts of McCarley v. West Quality Food Service also are particularly instructive to the case before us. There, a customer sued a fast food restaurant claiming that he had contracted food poisoning after eating improperly cooked chicken. McCarley, 960 S.W.2d 585, 588 (Tenn. 1998). The restaurant filed a motion for summary judgment, arguing that the customer "cannot carry his burden of proof to prove by a preponderance of the evidence that the chicken caused the food poisoning." Id. The customer's physician stated in deposition testimony that the customer's symptoms were consistent with having eaten improperly cooked poultry or meat. The restaurant argued that the customer could not establish that the food poisoning was caused by the chicken, rather than the eggs or bacon the customer had eaten earlier in the day. Id. at 588. The trial court granted the defendant restaurant's motion for summary judgment, and the Court of Appeals affirmed. Id. at 586.

In reversing the lower courts' decisions granting summary judgment, this Court stated: "[t]he appellate court acknowledged the moving party's burden of demonstrating the absence of material facts creating genuine issues for trial. The court, however, bypassed the moving parties' initial burden and addressed only the sufficiency of the non-moving parties' opposing evidence. We find that the court erred in focusing on the non-moving parties' burden without first addressing whether that burden was actually triggered." Id. at 587-88. The restaurant's assertions in its motion "may cause doubt as to whether the chicken or the bacon caused Mr. McCarley's illness. This evidence, however, *does not negate* the chicken from the list of possible causes. Accordingly, a genuine issue

of material fact exists as to causation which should be resolved by the trier of fact." Id. at 588. "Because KFC failed to negate a basis of the McCarleys' claim, the McCarleys' burden of production was never triggered." Id. at 589 (emphasis added).

The present case is very similar. In support of Defendant's motion for summary judgment, Defendant offered Plaintiff's deposition testimony that Plaintiff does not know how long the substance had been present on the parking lot or whether Defendant had notice of its presence. The Court of Appeals was correct in noting that while this evidence casts doubt on Plaintiff's ability to prove at trial whether Defendant had actual or constructive notice of the dangerous condition in Defendant's parking lot, it does not negate the element of notice. The deposition testimony does not prove that Defendant did not have actual or constructive notice. Therefore, the materials filed by Defendant did not affirmatively negate an essential element of Plaintiff's claim, and Plaintiff's burden to produce evidence establishing the existence of a genuine issue for trial was not triggered. Therefore, the trial court erred in granting summary judgment.

The Defendant emphasizes that Judge Goddard stated in his concurrence in this case that "if the evidence remains substantially the same as in the present record, West Town Mall might well be entitled to a directed verdict." The Defendant cites Byrd v. Hall, 847 S.W.2d 208 (Tenn. 1993) for the proposition that summary judgments and directed verdicts are reviewed under the same standards in Tennessee, and that therefore if Defendant would be entitled to a directed verdict on Plaintiff's proof, then Defendant would necessarily be entitled to summary judgment. However, Byrd does not support this position. In Byrd, we stated that the two motions "should be considered in the same manner . . . , i.e., the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." Byrd, 847 S.W.2d at 210-211. The point being made was that the trial court should view the evidence in favor of the nonmoving party in both instances, not that any case which results in a directed verdict should have been resolved by summary judgment. In addition, Judge Goddard's statement was that *if* the evidence remained substantially the same, directed verdict *might* be appropriate. This certainly does not amount to a holding that the Defendant will be entitled to a directed verdict at the end of Plaintiff's proof.

## Conclusion

Defendant's motion for summary judgment failed to affirmatively negate the element of notice of Plaintiff's premises liability claim. Under Tennessee law, therefore, the burden never shifted to Plaintiff to offer proof of a genuine issue of material fact for trial. We affirm the unanimous decision of the Court of Appeals that the trial court erred in granting Defendant's motion for summary judgment and remand this case to the trial court. We also hold that plaintiffs in premises liability cases in Tennessee may establish constructive notice of the dangerous condition by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence. Plaintiff may proceed upon this theory at trial. The costs of this appeal are assessed against Defendant, West Town Mall, for which execution may issue if necessary.

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE