John C. KERSEY, Sr.,

v.

John BRATCHER, et al.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

June 28, 2007 Session.

Sept. 14, 2007.

Order on Petition to Rehear
Oct. 10, 2007.

Permission to Appeal Denied by
Supreme Court April 14, 2008.

John C. Kersey, Sr., Murfreesboro, Tennessee, Pro Se Appellant.

D. Randall Mantooth, Nashville, Tennessee, for the Appellees, John Bratcher and Beverly Raechelle Wilson.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and P. Robin Dixon, Jr., Assistant Attorney General, for the Appellee, Michelle Blaylock.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., filed a separate concurring opinion, and SHARON G. LEE, J., filed a separate dissenting opinion.

John C. Kersey, Sr. ("Plaintiff") sued John Bratcher, Clerk of the Chancery Court for Rutherford County, Tennessee ("Bratcher"); Beverly Raechelle Wilson, Deputy Clerk of the Chancery Court ("Wilson"); and Michelle Blaylock, Judicial Assistant to Circuit Judge Rogers ("Blaylock"), claiming, in part, that the defendants had violated Tenn.Code Ann. § 10–7–503 regarding records open to public inspection. Blaylock filed a motion for summary judgment, and Bratcher and Wilson filed a motion to dismiss for failure to state a claim upon which relief can be granted. After a hearing, the Trial Court granted Blaylock's motion for summary judgment and Bratcher's and Wilson's motion to dismiss. Plaintiff appeals to this Court. We affirm.

### Background

In May of 2005, Plaintiff went to the office of the Clerk and Master of the Chancery Court for Rutherford County and requested access to the court file of a divorce case involving an elected official of the Town of Smyrna, Tennessee ("the File"). Plaintiff was informed by Wilson that the judge had the File. Plaintiff insisted upon being allowed to view the File. Wilson suggested that Plaintiff return on another day when the File might be available, but Plaintiff continued to insist that he be allowed to view the File immediately. Wilson then told Plaintiff he would have to speak to Bratcher and told Plaintiff where Bratcher's office was located.

Plaintiff went to Bratcher's office. A few minutes after Plaintiff arrived at Bratcher's office, Bratcher entered the office accompanied by two sheriff's deputies. Bratcher asked Plaintiff what he wanted and when Plaintiff told Bratcher he wanted to view the File, Bratcher informed Plaintiff that Judge Rogers had the File. Plaintiff continued to insist upon seeing the File. Bratcher contacted Judge Rogers' office by telephone, and then sent Plaintiff to Judge Rogers' office accompanied by the deputies.

When Plaintiff entered Judge Rogers' office, he encountered Blaylock who told Plaintiff to sit down on the couch and that she would allow Plaintiff to view the File. Plaintiff took offense to being told to sit on the couch and refused to sit and became loud. At that point, Plaintiff was escorted from Judge Rogers' office by the deputies.

Plaintiff sued the defendants claiming they were in violation of Tenn.Code Ann. § 10–7–503 regarding records open to public inspection. Wilson and Bratcher filed a motion to dismiss for failure to state a claim upon which relief can be granted. Blaylock filed a motion for summary judgment accompanied by Blaylock's affidavit which stated, in pertinent part:

2. On May 26, 2005, at approximately 11:15 a.m., I received a phone call from Raechelle Wilson, Deputy Clerk of the Chancery Court, regarding the where-

abouts of [the File]. I explained the file was currently on Judge Rogers' desk for review and potential recusal. I also explained the judge should be finished with the file that afternoon.

3. At approximately 11:20 a.m., I received a phone call from John Bratcher, Clerk and Master of the Chancery Court, requesting if there was any way Mr. Kersey could come to my office to review the file. I agreed and asked Mr. Bratcher to allow the sheriff's security deputies accompanying Mr. Kersey to escort him to my office.

4. When Mr. Kersey arrived at the office, I handed him the case file and told him he could review the documents while seated on our office couch. Mr. Kersey said he did not have to listen to me and would stand. I told Mr. Kersey I did not want him to stand above me and again said he could review the case file while seated on the office couch. Mr. Kersey became belligerent and stated I could not tell him what to do and he did not have to listen to me. After again explaining to Mr. Kersey he would have to review the materials while seated on the office couch, he started to argue again and raise his voice.

5. I asked the deputies to remove Mr. Kersey from my office. Deputy Rick Emslie took the file from Mr. Kersey, returned it to me and escorted him from the office.

After hearing argument on the motion to dismiss and the motion for summary judgment, the Trial Court entered its Order of Judgment on May 17, 2006 incorporating by reference the Trial Court's memorandum opinion in which the Trial Court found and held, *inter alia:*

[I]t is reasonable to request persons requesting access to public records to do so in a specific location that will not interfere with the operation of the office and allow the person examining the record to be observed by employees who are charged with the record's safekeeping. Otherwise, the functioning of a public office could be disrupted or public records could be altered or destroyed.

* * *

[T]he court is of the opinion the complaint fails to state a cause of action against the Defendants, John Bratcher and Beverly Raechelle Wilson and their Motion to Dismiss is granted. The Defendant, Michelle Blaylock, is entitled to a summary judgment in that her actions, as a matter of law, did not amount to a violation of the Tennessee Public Records Act.

Plaintiff appeals to this Court.

### Discussion

Although not stated exactly as such, Plaintiff raises two issues on appeal: 1) whether the Trial Court erred in granting Bratcher and Wilson's motion to dismiss for failure to state a claim upon which relief can be granted; and, 2) whether the Trial Court erred in granting Blaylock summary judgment. Blaylock raises an additional issue regarding whether this appeal should be dismissed as moot because Plaintiff has had access to the File and reviewed it after Plaintiff filed this action.

Plaintiff's claims rest upon his allegations that the defendants violated Tenn. Code Ann. § 10–7–503 regarding records open to public inspection. As pertinent to this appeal, Tenn.Code Ann. § 10–7–503 provides:

(a) Except as provided in § 10–7–504(f), all state, county and municipal records and all records maintained by the Tennessee performing arts center management corporation, except any public documents authorized to be destroyed by

the county public records commission in accordance with § 10–7–404, shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

Tenn.Code Ann. § 10–7–503 (Supp.2006). Also pertinent to this appeal, Tenn.Code Ann. § 10–7–505 provides, in part:

(a) Any citizen of Tennessee who shall request the right of personal inspection of any state, county or municipal record as provided in § 10–7–503, and whose request has been in whole or in part denied by the official and/or designee of the official or through any act or regulation of any official or designee of any official, shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access.

Tenn.Code Ann. § 10–7–505 (1999).

We first address whether the Trial Court erred in granting Bratcher and Wilson's motion to dismiss for failure to state a claim upon which relief can be granted. Our standard of review as to the granting of a motion to dismiss is set out in *Bell v. Icard* in which our Supreme Court explained:

A Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action as a matter of law. In ruling upon a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true. The motion to dismiss

should be denied unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. In considering this appeal from the trial court's grant of the defendants' motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions de novo with no presumption of correctness. Tenn. R.App. P. 13(d); (Citations omitted).

*Bell v. Icard*, 986 S.W.2d 550, 554 (Tenn. 1999).

▮▮▮ As pertinent to this issue, the relevant factual allegations contained in Plaintiff's complaint are: that Bratcher has the responsibility under Tennessee law to maintain all files for the Chancery Court of Rutherford County; that Wilson is under the direct supervision of Bratcher; that after Plaintiff requested to view the File, Wilson told Plaintiff the File was not available because the judge had the File; that Wilson told Plaintiff that if Plaintiff returned the next day the File might be available; that Wilson and Bratcher each inquired why Plaintiff wanted to see the File; that Wilson called the sheriff's deputies; and that Bratcher called Judge Rogers' office and asked the sheriff's deputies to accompany Plaintiff to Judge Rogers' office where the File was.

Even assuming that these facts are true, which we must at this stage, such facts do not state a cause of action. Plaintiff did not allege that Wilson or Bratcher denied his request to see the File either "in whole or in part." Tenn.Code Ann. § 10–7–505 (1999). Rather, Plaintiff's allegations are that Wilson and Bratcher both told Plaintiff that the judge had the File, that Wilson suggested that Plaintiff return another day when the File might be available, and that when Plaintiff insisted upon immediate access to the File Bratcher made it possible for Plaintiff to go to Judge Rog-

ers' office where the File was at that time. Instead of denying Plaintiff access, Wilson suggested another time when the File might be available and Bratcher made it possible for Plaintiff to have immediate access to the File. Given all this, Plaintiff failed to state a cause of action upon which relief could be granted, and the Trial Court properly granted Bratcher and Wilson's motion to dismiss. While Plaintiff is correct that his motive or reason for wishing to review the File was immaterial, the defendants' asking Plaintiff why he wished to review the File, while improper, did not result in Plaintiff being refused access to the File. While this question should not have been asked of Plaintiff, no defendant conditioned Plaintiff's access to the File upon Plaintiff's answering this question.

We next address whether the Trial Court erred in granting Blaylock summary judgment. In *Blair v. West Town Mall,* our Supreme Court reiterated the standards applicable when appellate courts are reviewing a motion for summary judgment. *Blair v. West Town Mall,* 130 S.W.3d 761 (Tenn.2004). In *Blair,* the Court stated:

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *See Staples v. CBL & Assoc., Inc.,* 15 S.W.3d 83, 88 (Tenn. 2000); *Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn.1997); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: 1) there is no genuine issue with regard to the material facts relevant to the claim

or defense contained in the motion, and 2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Staples,* 15 S.W.3d at 88.

* * *

> When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.

> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Blair,* 130 S.W.3d at 763, 767 (quoting *Staples,* 15 S.W.3d at 88–89 (citations omitted)).

Our Supreme Court has also provided instruction regarding assessing the evidence when dealing with a motion for summary judgment stating:

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable

inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210–11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

*Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn.2000).

■ Plaintiff's sworn complaint alleges that when he entered Blaylock's office:

51. Defendant BLAYLOCK, with an outstretched arm and a pointing index finger directed at PLAINTIFF, ordered "You go over there (Defendant BLAYLOCK pointing to a couch) and sit down and I will *allow* you to see the file."

\* \* \*

53. PLAINTIFF responded: "You don't give me orders! I'll stand and review the file."

54. Moments later PLAINTIFF was ordered to leave Defendant BLAYLOCK'S office and PLAINTIFF was never allowed to see the requested file.

Even viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, again as we must at this stage, we find that Blaylock did not deny Plaintiff's request to view the File either "in whole or in part." Tenn.Code Ann. § 10–7–505 (1999). Rather, as Plaintiff's complaint states, Blaylock told Plaintiff that he could view the File. Blaylock made a reasonable request that Plaintiff sit on the office couch while viewing the File. We agree with the Trial Court that:

[I]t is reasonable to request persons requesting access to public records to do so in a specific location that will not interfere with the operation of the office and allow the person examining the record to be observed by employees who are charged with the record's safekeeping. Otherwise, the functioning of a public office could be disrupted or public records could be altered or destroyed.

The record reveals that Blaylock made the reasonable request that Plaintiff review the record at a designated location, while sitting on her office couch rather than continue standing over her. Instead of complying with this reasonable request, or even asking to view the File in another location, Plaintiff became belligerent and argumentative, which resulted in his being asked to leave Blaylock's office. While members of the public have the right to view a public record, our General Assembly has not given them either the right to demand that such viewing be done strictly on their terms or the right to disrupt the functioning of a public official's office to the detriment of all other citizens of this state, as Plaintiff did, by refusing the official's reasonable request that the record be reviewed at a specific location.

As Blaylock did not deny Plaintiff's request to view the File either "in whole or in part," Blaylock negated an essential element of Plaintiff's claim. Tenn.Code Ann. § 10–7–505 (1999). There is no genuine issue of material fact and Blaylock is entitled to summary judgment as a matter of law. We, therefore, affirm the grant of summary judgment.

Given our determination regarding Plaintiff's issues, we decline to address the issue raised by Blaylock.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed

against the Appellant, John C. Kersey, and his surety.

HERSCHEL P. FRANKS, P.J., filed a separate concurring opinion.

SHARON G. LEE, J., filed a separate dissenting opinion.

HERSCHEL PICKENS FRANKS, P.J., concurring.

I fully concur in Judge Swiney's Opinion but wish to elaborate on the fact that the Judge had custody of the file that the plaintiff sought and was charged with safekeeping and protection of the file.

As Judge Swiney's Opinion recites:

"Rather, Plaintiff's allegations are that Wilson and Bratcher both told Plaintiff that the Judge had the File, that Wilson suggested that Plaintiff return another day when the File might be available ..."

The plaintiff's Complaint states that he was advised that the case was set the next day, Friday, and that the file "might" be available Friday afternoon.

The Dissent concedes there are some exceptions to the Tennessee Public Records Act, but "none are applicable in this case". I respectfully disagree with this conclusion. In my view, the Clerk and Master discharged his duties under the Act when he advised plaintiff that the Judge had possession of the file and that it would be available for inspection in effect after the case was tried the next day and returned to the Clerk and Master's office. Court files are regularly checked out by attorneys, often for a period of days, and it is a physical impossibility for the Clerk to furnish that public record on demand until the custody of the file is returned to the Clerk.

Obviously, the Judge in this case was charged with the custody and could place reasonable restrictions on the examination of the file by a third party, and while his assistant could have exhibited a kinder and gentler directive to the plaintiff, the plaintiff himself acknowledges his own belligerence in the Complaint.

Clearly, the Clerk and Master discharged his obligation to the plaintiff, since he did not have physical custody of the file and could not retrieve it, absent the custodial Judge's permission. The plaintiff's Complaint does not state that the judicial assistant to the Circuit Judge refused to allow him to inspect the Court file.

The Trial Court acted appropriately in dismissing this Complaint.

SHARON G. LEE, J., dissenting.

I respectfully dissent from the majority's opinion in this Public Records Act case. I would reverse the trial court's dismissal of the claim against the Clerk and Master and the deputy clerk and vacate the grant of summary judgment as to the judge's assistant.

*The Clerk and Master and Deputy Clerk's Motion to Dismiss*

I conclude after reviewing the allegations in Mr. Kersey's complaint, which we must take as true when reviewing a motion to dismiss, that Mr. Kersey has stated a claim for which relief can be granted under the Public Records Act.

Mr. Kersey alleges the following facts in his verified complaint:

1) The Defendant, John Bratcher, as the Clerk and Master of Rutherford County, has the responsibility to maintain all files for the Chancery Court and the duty to provide public records to anyone who requests to review or copy said records.

2) All records of the Chancery Court for Rutherford County are open for public inspection or copying unless such records

are sealed by a judge under a special exception of Tennessee law.

3) The Defendant, Beverly Raechelle Wilson, is a deputy clerk in the Clerk and Master's office and is under the direct supervision of the Clerk and Master.

4) Mr. Kersey went to the Clerk and Master's office and asked a deputy clerk if a case had been filed under the name of Mary Ester Bell. After checking the computer, the deputy clerk responded that a divorce had been recently filed under the name of Mary Ester Bell.

5) Mr. Kersey asked to see the divorce file. During the initial discussion, the deputy clerk Wilson intervened and told Mr. Kersey the file was unavailable.

6) Mr. Kersey anticipated such a response because he had observed that in years past, if a person of strong political power or one of his or her family members became involved in a lawsuit, the judge in whose court the lawsuit was filed would, on his own motion, recuse himself. This first judge would then send the file to another judge, presumably with some type of note attached identifying the important person, and asking that judge to consider recusal. The second judge would review the file, once he had time and was not in court. He would then make a decision about recusal in due time, and send the file on to a third judge without being in any big rush. By this procedure, the judges could keep the file tied up for days, if not for weeks.

7) Mr. Kersey knew that Mary Ester Bell was an elected official of the Town of Smyrna, Tennessee.

8) Mr. Kersey knew that Mary Ester Bell's father was a prominent citizen of Smyrna, who for many years was heavily involved in the politics of Rutherford County.

9) Mr. Kersey was informed that the "Judge" had the file. He assumed that this meant that Chancellor Corlew had the file.

10) Mr. Kersey asked if the case was set for today, which was Thursday, and was advised it was set for the next day, Friday. Mr. Kersey again requested the file since the case was not being heard that day but the next day.

11) Deputy clerk Wilson went into another office and was seen talking to another deputy clerk. She returned and told Mr. Kersey that the file was unavailable because the Judge had decided to recuse himself from the case and had sent the case on to another judge. She told him that if he came back Friday afternoon, the file "might" be available.

12) When Mr. Kersey insisted that deputy clerk Wilson tell him which judge had the file, she asked him why he wanted to see the file. He responded that it was none of her business; that it was a public record; and he did not have to give a reason for wanting to see the file.

13) Deputy clerk Wilson then called Clerk and Master Bratcher. While holding the telephone in one hand, she advised Mr. Kersey that Clerk and Master Bratcher wanted to know why he wanted to see the file. Again Mr. Kersey refused to divulge his reason.

14) Deputy clerk Wilson then told Mr. Kersey that he would have to see the Clerk and Master, whose office was on the fifth floor in Room 502. As Mr. Kersey proceeded up the steps from the clerk's office on the third floor to the fifth floor, he was met by two sheriff's department officers who were running as if some special emergency had occurred. Upon reaching the fifth floor, Mr. Kersey went to Room 502 and asked to see Clerk and Master Bratcher. He was told by one of the ladies in the office, "Please have a seat. Mr. Bratcher will be in shortly."

15) A few minutes later, Clerk and Master Bratcher entered the office and was accompanied by the two sheriff's department officers who had passed Mr. Kersey minutes earlier on the stairs. Clerk and Master Bratcher asked him if he was Mr. Kersey and he responded he was. Clerk and Master Bratcher then asked him what he wanted. Mr. Kersey was surprised by this question since the Clerk and Master's telephone conversation with the deputy clerk had occurred only minutes earlier and he knew what Mr. Kersey wanted. Mr. Kersey was told that Judge Rogers had the file. Mr. Kersey continued to insist on seeing the file. In response, Clerk and Master Bratcher called Judge Rogers' office. At the end of the conversation, the Clerk and Master ordered the two sheriff's department deputies to escort Mr. Kersey to Judge Rogers' office.

16) Deputy clerk Wilson called the sheriff's deputies after Mr. Kersey left the clerk's office, and the purpose of their presence was to intimidate him because he was seeking to review a file of a public person.

17) Mr. Kersey, surrounded by the two sheriff's deputies, then proceeded back to the second floor and entered Judge Rogers' office.

18) Upon entering the office, Mr. Kersey was met by Defendant Blaylock, whom Mr. Kersey describes as a "very hostile, almost irate individual." With an outstretched arm and a pointing index finger, she ordered Mr. Kersey, "You go over there (pointing to a couch) and sit down and I will allow you to see the file." Mr. Kersey responded, "You don't give me orders! I will stand and review the file."

19) Moments later, Mr. Kersey was ordered by a sheriff's deputy to leave the

office and was escorted out of the building and forced to leave. He was never allowed to see the divorce file.

Mr. Kersey filed this lawsuit pursuant to the Tennessee Public Records Act, Tenn. Code Ann. § 10–7–503, *et seq.*, which governs the right of access to public records in this state. The Act mandates that "all state, county and municipal records . . . shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records *shall not* refuse such right of inspection to any citizen, unless otherwise provided by state law." Tenn.Code Ann. § 10–7–503(a) (Supp.2006) (emphasis added). If access to public records is denied, judicial review is available. Tenn. Code Ann. § 10–7–505(a). If such a lawsuit is filed, the governmental entity bears the burden of proof and must justify its failure to disclose the record by a preponderance of the evidence. Tenn.Code Ann. § 10–7–505(c).

The General Assembly has explicitly stated that the Public Records Act "shall be broadly construed so as to give the fullest possible public access to public records." Tenn.Code Ann. § 10–7–505(d). The Tennessee Supreme Court has upheld this legislative mandate and sent a very clear message in several cases that public records should be available to citizens upon request. *See, e.g., Schneider v. City of Jackson,* 226 S.W.3d 332 (Tenn.2007); *Memphis Publ'g Co. v. City of Memphis,* 871 S.W.2d 681 (Tenn.1994); *Memphis Publ'g Co. v. Holt,* 710 S.W.2d 513 (Tenn. 1986).

Although there are some exceptions to the Act,[1] none are applicable in this case. The divorce file was clearly a public record, and the parties do not dispute its

---

1. For some examples of records which are not subject to disclosure pursuant to the Public Records Act, see Tenn.Code Ann. § 10–7–504.

designation as such. We begin with the premise that all nonexempt public records are open for inspection at all times during business hours by all citizens. The Act does not give public officials discretion to choose whether to comply or who may inspect the records. However, we know from experience and common sense that not all records are immediately available all the time.[2] The Act does not address the proper governmental response when records are in use or temporarily unavailable. We must, therefore, read into the Act a reasonableness provision that records that are not immediately available will be provided in a reasonable amount of time. In fact, we have previously stated as follows regarding records from which confidential information must be redacted prior to allowing public access:

> [I]t is logical to conclude that if a governmental entity or an agent thereof is unable to immediately satisfy a citizen's request for access to a public record pursuant to the Public Records Act because confidential information must be redacted from the document(s), then it should, at the time of the request, inform the citizen that access to the record will be allowed and also explain the reason for any delay in production of the document. The entity or its agent should also provide a time when the citizen will be able to view the record or may, instead, collect contact information from the citizen and notify him or her when the redaction is complete.

*Kersey v. Jones,* No. M2006–01321–COA–R3–CV, 2007 WL 2198329, at *5 (Tenn. Ct.App. M.S., filed July 23, 2007). I see no reason why this procedure should be limited to public records which are temporarily unavailable because of the redaction process. Indeed, it would not have inconvenienced the Defendants in this case to determine and convey to Mr. Kersey a definite time when he could return to view the file, rather than sending him from office to office in an apparent scavenger hunt for the record he had requested.

The public's right to access records cannot be circumvented or obstructed by allowing governmental officials to play a shell game with public records or otherwise make the records ˙"unavailable" for review. This is essentially what Mr. Kersey alleges occurred in this case, and we must, for the purposes of a motion to dismiss, take this allegation as true. Denial of access to a public record need not be an outright refusal to allow an inspection. It can also occur when a records custodian declares that a record is "unavailable," when in fact the record is available, or when a records custodian makes the process of obtaining access to a requested record too difficult or cumbersome for a citizen. Either way, the end result is the same-a citizen is denied access to public records in violation of state law. In this case, although the clerks did not tell Mr. Kersey directly that he was not allowed to see the divorce file, their combined actions certainly had the effect of denial of access.

---

**2.** In fact, state law requires the redaction of certain confidential information from otherwise public records before they may be inspected by the public. *See* Tenn.Code Ann. § 10–7–504(f) (requiring redaction of certain personal information, such as telephone and social security numbers, from the personnel records of government employees). We have held that under those circumstances, a citizen may not be entitled to immediate access to a public record, although access to the file should not be delayed longer than the time necessary to redact the confidential information from the requested records. *Kersey v. Jones,* No. M2006–01321–COA–R3–CV, 2007 WL 2198329, at *4–5 (Tenn. Ct.App. M.S., filed July 23, 2007).

Mr. Kersey should not have been made to run through a gauntlet of obstacles to view a public record. He first asked to see the divorce file, which he had a right to inspect. He was told the file was unavailable, then told the judge had the file, then told the case was set for the next day, then, following a conversation between clerks in the next room, he was told that the Judge had recused himself and had sent the file to another judge. Thereupon Mr. Kersey was told that if he returned Friday, which would have been after the hearing, he *might*—not *would*—be able to view the file. When Mr. Kersey continued to insist on seeing the file, he was asked why he wanted to see the file. Mr. Kersey, quite appropriately, responded that it was none of the clerk's business, that it was a public record, and he did not have to have a reason. When the Clerk and Master was called, he also inquired as to the reason for the request. Again, Mr. Kersey refused to divulge his reason. Mr. Kersey was then sent to the fifth floor to the Clerk and Master's office. Climbing the stairs, he was met by two sheriff's deputies running as if responding to an emergency. When he arrived at the Clerk and Master's office, Mr. Kersey again had to explain what he wanted. He was told that Judge Rogers had the file, and Mr. Kersey once again insisted on seeing the file. At this point, the Clerk and Master, who is the official custodian of the record, sent Mr. Kersey, escorted by sheriff's deputies, to the judge's office, rather than retrieving the record himself. Upon his arrival, Mr. Kersey was told by a hostile, irate court employee to sit down and "I will *allow* you to see the file." When Mr. Kersey refused to sit on the couch, he was ordered to leave and escorted out of the building by the sheriff's deputies.

In the event that a public record is not immediately available for review, a citizen should not be given confusing, protracted, and inconsistent explanations as to where the requested file is and why it is unavailable. The response to Mr. Kersey's request to view a public record was contrary to the spirit and the letter of the Public Records Act. Compliance with the Act should minimize or eliminate unpleasant encounters, such as the one experienced by Mr. Kersey. Noncompliance with the Act, on the other hand, breeds mistrust of governmental entities and officials. A person seeking to inspect a public record should not be questioned once—and certainly not twice, as in this case—about why he or she wants to view the record. Such inquiries are improper and imply that the "correct" answer will be the key that will unlock the "vault" of public records.

From the facts alleged in the complaint, it is my opinion that Mr. Kersey should be allowed his day in court and that the Defendants should be required to prove a legal basis for their nondisclosure of the court file, as required by the Public Records Act.

### *Summary Judgment as to the Judge's Assistant*

Because it is my opinion that there was a disputed question of material fact as to whether the judge's assistant, Ms. Blaylock, as the designee of the Clerk and Master, complied with the Act, I would reverse the grant of summary judgment to her. If the only undisputed fact was that Mr. Kersey refused to sit in the spot she indicated while he inspected the divorce file, then I would agree with the majority. But the facts must be viewed in their totality, and the events leading up to verbal exchange must be considered. Mr. Kersey describes the assistant as a "very hostile, almost irate individual" who "ordered" him to sit with an "outstretched arm and a pointing index finger." Ms. Blaylock was at least the fifth person Mr.

Kersey had spoken to about the record, her office was the third office he had visited in search of the record, and he was escorted there by two sheriff's deputies. Governmental officials should not be allowed to manufacture a situation wherein a citizen must go from place to place seeking a public record while receiving confusing and inconsistent responses from the very employees who are supposed to facilitate retrieval of the record, and then escape blame when the citizen becomes upset and exasperated because of their refusal to make the record available. A factual question certainly exists as to whether that is the situation that occurred in this case, and therefore, summary judgment is inappropriate.

In conclusion, I would vacate the dismissal of Mr. Kersey's claims against Mr. Bratcher and Ms. Wilson, as Clerk and Master and deputy clerk, and vacate the grant of summary judgment to Judge Rogers' assistant, Ms. Blaylock.

## ORDER ON PETITION TO REHEAR

Petitioner, John C. Kersey, Sr., filed his Petition to Rehear pursuant to Rule 39 of the Tennessee Rules of Appellate Procedure. All matters raised in the Petition were fully argued by the parties, considered by this Court, and sufficiently addressed in our Opinion. Therefore, we find the Petition is not well taken, and it is DENIED. Judge Lee joins in the denial of the Petition to Rehear but reaffirms her dissent. Costs related to this Rule 39 Petition to Rehear are taxed to the Petitioner, John C. Kersey, Sr.