IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
**October 18, 2017 Session**

## LINDA WIMMER V. CHATTANOOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY D/B/A/ ERLANGER HEALTH SYSTEM

**Appeal from the Circuit Court for Hamilton County**
**No. 14C507  W. Neil Thomas, III, Judge**

_____

**No. E2017-00352-COA-R3-CV**

_____

John W. McClarty, J., dissenting.

The majority holds that Erlanger was immune from suit pursuant to Tennessee Code Annotated section 29-20-101, et seq., the Tennessee Governmental Tort Liability Act ("GTLA"); that Ms. Wimmer failed to prove that said immunity was removed; and, in the alternative, that she failed to prove causation. I think the hospital is liable for this injury and the plaintiff should prevail.

Erlanger's immunity under GTLA could be removed pursuant to section 29-20-204, which provides:

> **29-20-204. Removal of immunity for injury from dangerous structures – Exception – Notice required.**
>
> (a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.
> (b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302 [repealed].

Tenn. Code Ann. § 29-20-204 (2012).

In the case before us, I believe the door should be considered a dangerous condition of which Erlanger had notice. Rodney J. Patton, who formerly worked at Erlanger for the hospital police, testified that during his employment with defendant he was routinely familiar with this particular door and others similar to it. The majority opinion notes his testimony as follows:

> When asked specifically about the Door, Mr. Patton stated:
>
> "That is an odd door. There's a couple of doors in the medical mall that you can be standing there and someone may push that door out and you may not be - - they may not know someone is standing on the other side. There's a couple of doors like that."
>
> Mr. Patton was asked if he ever made reports about doors hitting people while at Erlanger, and he stated: "Routinely, if an individual got hit by a door, that is something that would have went up to the A1 house supervisors at Erlanger."

During the testimony of James Howard Robinson, Jr., a structural and forensic engineer, he "agreed when asked that it was possible for [the door] to be a dangerous condition even if it were code compliant." As was further noted in the majority opinion, no warning sign was provided that the door might be pushed out:

> Plaintiff testified that there was no sign telling her not to stand where she was standing, and that she did not notice a window in the Door. . . . She stated . . . that she did not see the Door until after she was hit. . . .
>
> Plaintiff was asked if during her past visits to Erlanger she had seen other people standing in the area where she had been standing when the Accident occurred, and she stated: "Yes. People stood there." Plaintiff stated:
>
> It was typical to wait there, not only myself, but there would be other people waiting at times. It wasn't real crowded up together, but there would be - - one or two other people would be standing here, waiting for their rides, because our van wasn't the only one that came up there to pick people up.
>
> Plaintiff was asked why she didn't sit in an available chair away from the Door, and she stated:

2

I could, but I couldn't have seen [the van driver] until he pulled up right in front of the doors, which upset him, because he - - people start blowing their horns at him and cursing him and stuff like that. . . . He couldn't leave the van. He'd expect you to see him, and that's why I was standing. . . . And he was coming from the left direction. So I had to see from the left up the driveway, to see him turning into the driveway. And I would start out the door, because he had to put the lift down to put me in the van. . . .

Michael Roy Baker, the senior director of facilities for Erlanger, explained that seating where the accident occurred is some distance from the outside door. He noted that the chairs face toward one another, not toward the outside doors, and that the "common waiting areas" are not "designed to see out the door."

As related by the majority, further expert testimony by Clarkson Lee Mason, a professional engineer and architectural consultant, revealed the following regarding the dangerous condition posed by the fire door at issue:

[A]s you learn more about what occurred, you can see why things could become hazardous, if certain sets of circumstances were to prevail approximately at the same time.

When asked if he had an opinion about whether the Door should have had a sign, Mr. Mason stated:

Yes, I do have an opinion. And I think it's appropriate, very appropriate for any exit door to have a warning to other people who may be casually waiting to - - waiting to walk by it or whatever . . . .

With regard to the necessity for a sign, Mr. Mason further stated:

Well, from my engineering point of view and, I'd like to say, common sense based on my engineering and experience in the business having to do with buildings, you kind of would expect there to be some sort of a warning sign there so that couldn't recur, that action wouldn't recur.

Mr. Mason was asked if someone standing in front of the Door with no sign would know it was an exit door, and he

3

stated: "Only by past experience, having been there often enough to realize that. But there's not distinguishing marks." Mr. Mason stated that in his opinion the cost of such signs is minimal. According to Mr. Mason, there is no way for people to know in the absence of a sign that the Door might open into them. . . .

When asked if the Door not having a sign was a problem, Mr. Mason stated: "Well, the problem was not so much the sign. The problem was there wasn't any way for her to be seen or for her to see what was happening, and she did get hit and get hurt." He was asked if he had an opinion about whether there should be glass in the Door, and he testified:

. . . [Y]ou need to be able to let whoever is on the inside know there is a falling hazard on the inside. And vice versa; someone on the outside knows or can perceive someone coming through that door and hit them. That may not stop it from happening, but they'll at least have some idea that it's getting ready to happen . . . .

As noted by Mr. Mason, "common sense and experience" revealed the door to be a dangerous condition of which Erlanger had notice.

Erlanger's immunity under the GTLA also could have been removed pursuant to either Tennessee Code Annotated section 29-20-205. The pertinent part of section 29-20-205 provides that immunity "is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment . . . ," except in specific circumstances not applicable to the instant case. Tenn. Code Ann. § 29-20-205 (2012).

According to plaintiff, the person who opened the door and knocked her down was an Erlanger employee because he was wearing scrubs. Ms. Wimmer described the accident as follows:

I was knocked about halfway across the foyer there and finally fell on my back. And when I fell, I couldn't feel anything from my neck down. I was afraid that I'd been paralyzed, broken my back or something.

And the man was right behind me, and he had on scrubs and he had on the bandana. And I assumed he was an employee

4

of the hospital since he was dressed in scrubs and they were blue.

He bent over and [sic] me and he said, "Are you all right?"

I said, "No. I can't feel anything from my neck down."

He says, "I can't stay with you, but I'll go get help."

And he ran off, going in the direction down the hall. . . . And I lay there for about 15 minutes more and he came running back. He said, "I couldn't find anybody. I'll be back."

And he ran off again. In a little while, a lady came down. And he said, "I'll get someone to stay with you."

A lady came down. I assume she was an office worker. And she said, "I'm going to stay with you until the ambulance comes." So she did. She stayed there and talked to me till the ambulance came.

The trial court's findings noted as follows:

The events of the accident are shown on a video . . . and depicted an open area in front of the facility with two sets of sliding doors. Mrs. Wimmer was waiting on the inside of the inside doors with a door from a stairwell to her right. That door opened outward into the lobby area. While waiting, she was hit by the door and knocked down when a man in scrubs opened the door in somewhat of a hurry. . . . It was undisputed that there was no sign on the door; nor was there any aperture in the door through which someone on either side of the door could see.

In my view, Ms. Wimmer proved that Erlanger's immunity was removed under the GTLA.

With regard to causation, the trial court held:

[T]he question then becomes whether there has been evidence of causation, namely, whether the accident would have been avoided even with the existence of a sign or a glass window. The testimony of Mr. Mason was only that the door opened in

5

such a way as to not cause a warning to the Plaintiff, not that
the warning would have made it more likely than not that the
accident would not have occurred. . . .

Business proprietors are not insurers of their patrons' safety. *See, e.g., Blair v. West Town Mall,* 130 S.W.3d 761, 764 (Tenn.2004). They are, however, expected to maintain the premises in a reasonably safe condition by removing or repairing dangerous conditions or by helping customers avoid injury by warning them of such dangerous conditions. *See Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn.1996).

I would find that the evidence preponderates against the findings made by the trial court. The accident occurred when the Erlanger employee hurriedly pushed open the door that constituted a dangerous condition and knocked the plaintiff down. In my view, the evidence supports the conclusion that the accident would have been avoided with the existence of a warning sign or a glass window. Thus, the trial court erred in reaching the conclusion that plaintiff failed to prove causation. Accordingly, I respectfully dissent.