IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2010 Session

## DEWAYNE SHARKEY v. MOLLY O'TOOLE, M.D.

**Appeal from the Circuit Court for Davidson County**
**No. 07-C-2143      Amanda McClendon, Judge**

**No. M2009-01112-COA-R3-CV - Filed August 19, 2010**

An inmate appeals a summary judgment dismissing his medical malpractice and 42 U.S.C. § 1983 claims against the correctional facility's psychiatrist. Since the defendant's doctor negated essential elements of both claims with her expert affidavit and plaintiff failed to create a genuine issue of material fact, the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Joseph Howell Johnston, Nashville, Tennessee, for the appellant, Dewayne Sharkey.

E. Reynolds Davies, Jr., John T. Reese, Nashville, Tennessee, for the appellee, Molly O'Toole, M.D.

## OPINION

Mr. Sharkey filed suit against Corrections Corporation of America, the warden and a correctional officer making various tort and civil rights claims related to medical treatment he received while incarcerated at South Central Correctional Center ("SCCC"). The complaint also included claims against Dr. Molly O'Toole, the facility's psychiatrist.

Mr. Sharkey's complaint alleged that Dr. O'Toole provided medical and psychiatric services to inmates to SCCC. According to his complaint, Dr. O'Toole prescribed Haldol to Mr. Sharkey in spite of his protests and a note in his file advising Dr. O'Toole that Mr. Sharkey was allergic to Haldol. Mr. Sharkey alleged that he suffered severe and debilitating side effects as a result of being treated with Haldol. His complaint alleged two causes of

action against Dr. O'Toole.  First, Mr. Sharkey alleges that Dr. O'Toole violated 42 U.S.C. § 1983 as follows:

> The conduct of Defendant Dr. O'Toole in prescribing antipsychotic medications to treat Plaintiff which were known to have caused him to suffer severe and long-lasting side effects constitutes a gross departure from the standard of care for psychiatrists treating patients such as Plaintiff and therefore constitutes deliberate indifference to his serious medical needs [in violation of the 8th Amendment to the United States Constitution].

Second, Mr. Sharkey alleged Dr. Toole committed medical malpractice.

> Plaintiff avers that the conduct of Defendant Dr. O'Toole was negligent and constitutes medical malpractice as provided under Tennessee Code Annotated § 29-26-115.  She negligently breached the standard of acceptable professional practice owed to Plaintiff which was a proximate cause of the aggravation of his pre-existing condition which would not have otherwise occurred.

In response, Dr. O'Toole filed a motion for summary judgment accompanied by her affidavit.  According to her affidavit, she has practiced psychiatry since 1992 in Nashville and has been a psychiatrist at SCCC since 1994.  Dr. O'Toole's affidavit states that based on her education and experience practicing psychiatry in Clifton, Tennessee, where the SCCC is located since 1994, she is familiar with the recognized standard of professional practice for psychiatrists during the relevant time.

According to Dr. O'Toole's affidavit, at the time of her initial evaluation in May of 2004, Mr. Sharkey was already receiving injections of 200 mg per month of Haldol to treat his previously diagnosed schizophrenia.  At that time, Mr. Sharkey reported no complaints and indicated on his health questionnaire that he had no allergies.  While Mr. Sharkey expressed a desire not to take Haldol, "in my judgment, it was appropriate to continue treating him with Haldol for management of his mental health condition."  She discussed the risk and benefits of Haldol with him and reduced his monthly injection of Haldol to 50 mg.  Mr. Sharkey signed a consent form for the reduced Haldol.  When she saw Mr. Sharkey in July of 2004, Mr. Sharkey denied having any side effects and at that time "I was unable to find any clinical evidence that Mr. Sharkey suffered from psychosis or major affective disorder and I began to suspect that Mr. Sharkey was not truly psychotic."  At that time, she further reduced his dosage of Haldol to 25 mg per month.

Dr. O'Toole states in her affidavit that she saw Mr. Sharkey thereafter regularly from May of 2004 through January of 2006.  According to Dr. O'Toole's affidavit, she did not

observe any clinical evidence that Mr. Sharkey was allergic to Haldol or complications arising from long term administration of the antipsychotic medication. Dr. O'Toole's affidavit also states that in the event a patient suffers side effects from Haldol, that does not mean the patient is allergic to the drug. On numerous occasions, Mr. Sharkey refused to take his dose of Haldol and, after noting that Mr. Sharkey was doing well for months without antipyschotic medication, she terminated the Haldol order in August of 2005.

Dr. O'Toole does not deny Mr. Sharkey's abnormal behavior. She describes in her affidavit abnormal behavior by Mr. Sharkey and that generally she saw him after each of these incidents. Her affidavit provides as follows:

> I did not find any consistent clinical evidence of psychosis during multiple clinical evaluations of Plaintiff and it is my opinion that Plaintiff was not and is not psychotic. Plaintiff did not receive any Haldol during this time [of the abnormal behavior] and had not received Haldol since September 2005. It is my opinion now and at the time of these occurrences that Plaintiff engaged in purpose-driven, abnormal behavior because he wanted a cell to himself and wanted to be transferred to the special needs facility in Nashville for this reason.

Dr. O'Toole goes on to give an expert opinion on whether her treatment of Mr. Sharkey constituted negligence, medical malpractice or indifference to his medical needs, whether intentionally, or negligently:

> . . . I recommended a substantial decrease in the Haldol dosage that had already been ordered for Mr. Sharkey by another physician in order to decrease the potential for side effects from long-term administration of this antipsychotic medication.

> The psychiatric evaluations and treatment that I provided to Mr. Sharkey on numerous occasions from May 2004 through December 2005 fully complied with the recognized standard of acceptable professional practice for psychiatrists in Clifton, TN for treatment of similar patients under similar circumstances. I accurately diagnosed the Plaintiff's condition based upon the information available to me at the time, and I provided appropriate psychiatric management of this patient, including appropriate antipsychotic drug management with Haldol, monitoring for effectiveness and side effects, and appropriate and timely follow-up psychiatric evaluations. It is my opinion that I did not cause the Plaintiff to suffer any injury which would not otherwise have occurred.

I was not deliberately indifferent to any serious medical or psychiatric need while Mr. Sharkey was under my care, and I did not deliberately or intentionally prescribe or administer Haldol to Mr. Sharkey with the knowledge that he was allergic to the medication. Instead, I made an appropriate diagnosis of Plaintiff's condition and I provided appropriate psychiatric treatment, antipsychotic drug therapy, monitoring, and follow-up care. My diagnosis, evaluation, and treatment of Plaintiff did not deviate from the recognized standard of acceptable professional practice for psychiatrists in Clifton, TN in 2004-2005, and I did not fail to take any action or prescribe any additional treatment required by the standard of care under the circumstances of this case.

For these reasons, it is my opinion that I complied with the requirements of acceptable professional practice in providing psychiatric care and treatment to Plaintiff Dewayne Sharkey. Nothing which I did, or failed to do, caused Plaintiff to suffer any injury which would not otherwise have occurred.

In response to Dr. O'Toole's affidavit, Mr. Sharkey filed his affidavit. According to his affidavit, he disagreed with Dr. O'Toole about the cause of his abnormal behavior and stated that he should have been prescribed an alternative medication for his mental illness. Mr. Sharkey also argues that side effects from Haldol indicate it should not be prescribed.

The trial court granted Dr. O'Toole's motion for summary judgment in May of 2009. The trial court found as follows:

After consideration of the record before the Court, and pursuant to TRCP 56.04, the Court is of the opinion that Defendants have appropriately negated essential elements of Plaintiff's cause of action under 42 U.S.C. § 1983 (deliberate indifference to a serious medical need), that proof of causation of injury is not within the realm of lay understanding in this case and must be established through expert witness testimony, that Plaintiff has had a sufficient amount of time to obtain expert witness testimony to oppose Defendant's summary judgment motion, and that Plaintiff's evidence fails to demonstrate that there are genuine issues of material fact for trial relating to the existence of Plaintiff's injuries and damages, including whether or not Plaintiff had an allergy to the medication Haldol.

The Court is also of the opinion that Defendants have appropriately negated essential elements of Plaintiff's medical malpractice action under T.C.A. § 29-26-115, that proof of causation of injury is not within the realm of lay

understanding in this case and must be established through expert witness testimony, and that Plaintiff has had a sufficient amount of time to obtain expert witness testimony to oppose defendant's summary judgment motion. Plaintiff's evidence fails to demonstrate that there are genuine issues of material fact for trial relating to the recognized standard of acceptable professional practice in the specialty of psychiatry, whether or not Defendant acted in accordance with such standard, and the existence of Plaintiff's injuries and damages. Plaintiff's evidence has not created any issues of fact that Defendant O'Toole injured him or that Plaintiff suffered injuries that would not otherwise have occurred if treatment had been instituted by Dr. O'Toole using a medication other than Haldol. T.C.A. § 29-26-115(a)(3).

Mr. Sharkey appeals.

## I. SUMMARY JUDGMENT AND MEDICAL MALPRACTICE

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Id.* Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

The moving party has the burden of demonstrating it is entitled to judgment as a matter of law and that there are no material facts in dispute. *Martin*, 271 S.W.3d at 83. To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). If the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of a genuine issue of material fact. *Martin*, 271 S.W.3d at 84; *Hannan*, 270 S.W.3d at 5; *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

Expert testimony is required to establish negligence and causation in medical malpractice cases, except where the act of alleged malpractice lies within the knowledge of ordinary laymen. *Kenyon v. Handal*, 122 S.W.3d 743, 758 (Tenn. Ct. App. 2003); *Mercer v. HCA Health Services of Tennessee*, 87 S.W.3d 500, 507 (Tenn. Ct. App. 2002). Tennessee Code Annotated § 29-26-115 sets out the requirements for establishing a malpractice claim,

providing in pertinent part:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
>> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
>
> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

As discussed above, in order to be successful on summary judgment, a defendant must negate an essential element of plaintiff's claim. Medical malpractice actions are no exception to this rule.

> In the malpractice actions wherein expert testimony is required to establish negligence and probable cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the actions on summary judgment, in the absence of proper responsive proof by affidavit or otherwise.

*Bowman v. Henard*, 547 S.W.2d 527, 531 (Tenn. 1977).

The burden of establishing that an expert meets the requirements of Tenn. Code Ann. § 29-26-115 is on the party offering the expert, whether it be a plaintiff or defendant. *Allen v. Methodist Healthcare Memphis Hospitals*, 237 S.W.3d 293 (Tenn. Ct. App. 2007) (citing *Carpenter v. Klepper*, 205 S.W.3d 474, 483 (Tenn. Ct. App. 2006).

## III. ANALYSIS

On appeal, Dr. O'Toole argues that her affidavit provides clear and unambiguous proof that Dr. O'Toole's treatment of Mr. Sharkey met the recognized standard of professional practice for psychiatry and that Mr. Sharkey was not injured by the treatment he received from Dr. O'Toole. This same proof also establishes that Dr. O'Toole was not indifferent to his medical needs, whether deliberately or negligently. Since the essential elements of Mr. Sharkey's claims were negated and he did not offer countervailing expert testimony, Dr. O'Toole argues the trial court should be affirmed.

Mr. Sharkey makes several arguments why the trial court erred in granting Dr. O'Toole summary judgment which we will address in turn.

First, Mr. Sharkey argues that in Dr. O'Toole's deposition it was shown that she was not familiar with the contents of the Tennessee Department Of Correction's Mental Health Procedures and Treatment Manual ("Manual") and, as such, she is not familiar with the recognized standard of care. There is no proof, however, that the Manual embodies the standard of care. Mr. Sharkey submits no proof that the Manual sets or describes the standard of care and, according to Mr. Sharkey's brief, Dr. O'Toole herself refused to testify in her deposition that the Manual embodied the applicable standard.

Second, Mr. Sharkey argues that Dr. O'Toole allegedly violated several provisions in the Manual during her treatment of him. As discussed above, however, there is no proof that the Manual established or embodied the applicable standard of care.

Third, Mr. Sharkey argues that Dr. O'Toole's treatment was the proximate cause of his injuries. In effect, Mr. Sharkey is arguing that her diagnosis and treatment were in error but provides no proof of such conclusions, expert or otherwise, other than his mere assertion. Furthermore, Dr. O'Toole provides expert proof in the form of her affidavit that her treatment of Mr. Sharkey did not injure him.

Fourth, Mr. Sharkey appears to argue that Dr. O'Toole's affidavit is lacking in substance and is merely conclusory. Dr. O'Toole's affidavit is 8 pages in length, with most of them devoted to describing her treatment of Mr. Sharkey in considerable detail.

Finally, with regard to his § 1983 claim, Mr. Sharkey argues Dr. O'Toole failed to establish that she was not indifferent to his serious medical needs. However, the civil rights claim is based on the same alleged mistreatment by Dr. O'Toole as the malpractice claim. Again, Mr. Sharkey offered no expert proof to rebut Dr. O'Toole's affidavit. Additionally, even if the elements of the indifference claim are different from those of the malpractice claim, Dr. O'Toole's affidavit sets out a course of treatment and dealings with Mr. Sharkey that demonstrate a lack of indifference. Mr. Sharkey argues he should be given further time to locate an expert. Mr. Sharkey filed this action in July of 2007, Dr. O'Toole filed her affidavit in support of her motion for summary judgment in October of 2008, and the trial court granted the motion in May of 2009. Mr. Sharkey was represented by counsel throughout. The trial court did not err when it found that Mr. Sharkey had an adequate opportunity to locate expert testimony.

For the foregoing reasons, the trial court is affirmed. Costs of this appeal are assessed against the appellant, Dewayne Sharkey for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE