IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 15, 2010 Session

## KERRY JORDAN v. YMCA OF MIDDLE TENNESSEE, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 08C-1774      Amanda J. McClendon, Judge**

**No. M2009-02369-COA-R3-CV - Filed September 30, 2010**

A young woman was thrown from a horse at a camp operated by the YMCA of Middle
Tennessee, breaking her arm. Unbeknownst to the woman, the same horse had thrown two
experienced riders ten days earlier. She filed a suit for negligence against the YMCA and
the camp, alleging that their employees and volunteers knew the horse to be dangerous, but
that they nonetheless failed to ascertain whether she was sufficiently experienced to handle
such an animal. The defendants filed a motion for summary judgment, claiming that they
were immune from liability under the provisions of the Equine Activities Act, Tenn. Code
Ann. § 44-20-101 et seq. The trial court granted the motion. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D.
BENNETT and RICHARD H. DINKINS, JJ., joined.

Delain Deatherage, Nashville, Tennessee, for the appellant, Kerry Jordan.

Richard C. Mangelsdorf, Jr., Charlotte S. Wolfe, Nashville, Tennessee, for the appellees,
YMCA of Middle Tennessee and Camp Widjiwagan.

## OPINION

### I. A SUIT FOR NEGLIGENCE

The incident from which this lawsuit arose occurred after Kerry Jordan accepted an
invitation from her friend and co-worker, Lynn Blair-Anton, to volunteer in the equestrian
program at Camp Widjiwagan, which is operated by the YMCA of Middle Tennessee. Ms.
Jordan was one of several volunteers who agreed to lead a group of children on a guided trail
ride during her first trip to the camp. No children were there when they arrived, however,

so the volunteers decided to familiarize themselves with the planned route. They chose horses from the camp stable, mounted them, and rode to the lake.[1] After one of the volunteers dismounted, the horse panicked and ran back to the stable.

Another trail ride with children was planned as part of an NES picnic a few weeks later. On June 9, 2007, Ms. Jordan and Ms. Blair-Anton returned to Camp Widjiwagan for that outing. As the children and their parents began arriving, Ms. Blair-Anton suggested that Ms. Jordan "grab a horse and go ahead and get in the ring, and we'll start sending people out." There was a sign in the stable directing all participants to "wear a properly secured helmet at all times while riding." Ms. Jordan asked Ms. Blair-Anton's teenage daughter if she needed to put on a helmet, and was told that it was up to her if she wanted to wear one. She did not see anyone else wearing a helmet, so she did not put one on.

Ms. Jordan chose a horse that had been on the earlier trial ride (not the one that panicked) and who seemed to her to have "a sweet disposition." It was already saddled up, and without a helmet she mounted the horse, but "[it] just started bucking as soon as I got into the ring." The horse bucked Ms. Jordan off, and the fall broke her arm. She did not hit her head or suffer any kind of head injury. Ms. Jordan later discovered that the horse, a ten year old gelding named Siena, had thrown two experienced riders about ten days earlier.

On June 5, 2008, Ms. Jordan filed a complaint in the Circuit Court of Davidson County, naming the YMCA of Middle Tennessee and Camp Widjiwagan as defendants. She claimed that her accident was caused by the negligence of the YMCA and its employees, and that as a result of the accident she sustained damages that included emotional suffering, loss of wages, health care expenses, and permanent physical impairment. The defendants filed an answer in which they raised several defenses. The only defense which is relevant to this appeal is their assertion that they were shielded from liability by the provisions of the Equine Activities Act, Tenn. Code Ann. § 44-20-101 et seq.

On June 15, 2009, the defendants filed a motion for summary judgment, accompanied by the plaintiff's deposition as well as those of YMCA summer employee Evan R. Myrick and YMCA volunteer William Reece, and the affidavits of Lynn Blair-Anton and YMCA employee John King. Ms. Jordan filed a response to the motion, accompanied by the affidavits of Tim Norris, an experienced horseman from Bedford County, and Leighton Sissom, a mechanical engineer and former dean of engineering at Tennessee Technological University.

---

[1]Camp Widjiwagan adjoins Percy Priest Lake.

Kerry Jordan testified at deposition that she was born in 1983 and that she had first ridden horses at age seven when she was in the Girl Scouts. When she was in high school, she rode "about five times" with a classmate of hers who owned a horse. At one point, she vacationed on an Arizona farm with her sister, and they took a two hour trial ride. She testified that she did not consider herself an experienced rider, but that she was not afraid of horses.

Sixty-nine year old William Reece testified that he had been around horses all his life, had ridden and cared for horses of every breed and age, and had been an equestrian volunteer at Camp Widjiwagin since 2001. On the day of the accident, he met Kerry Jordan and overheard her saying that she had ridden horses before, but that it had been a while. Mr. Reece also said that he had never ridden Siena, but that he remembered the horse as having a sweet disposition, and that he was unaware of any problems with it.

Twenty year old Evan Myrick grew up on a farm and was also an experienced horseman. He started working at Camp Widjiwagin in the summer of 2006, teaching children how to groom, saddle, and ride horses. He testified that there were no problems with Siena that year, but that about ten days before Ms. Jordan's accident, Siena bucked off one of his fellow employees, an experienced equestrian named Brooke, during staff training. The following day, Mr. Myrick tried riding Siena. The horse bucked but could not throw him. Siena then reared up and fell onto its side. Evan Myrick fell to the ground, but was unhurt. He testified that he didn't know what made the horse buck. The plaintiff's attorney asked him hypothetically if, knowing that Siena had thrown two riders he would put a family member of his own on the gelding if that family member had only ridden a horse seven or eight times. He answered in the negative.

Lynn Blair-Anton testified by affidavit that Kerry Jordan appeared to be comfortable around horses, and "was obviously experienced with respect to her ability to saddle, equip and ride her horse with appropriate technique." She also stated that she was familiar with Siena, and that the gelding was routinely ridden by young children and adults as part of the trail riding program. Ms. Blair-Anton had learned that Siena had bucked off a camp staff member about 10 days prior to June 9, 2007, but stated that "[f]rom my observation the horse Siena was always a good-natured horse that was safe for riding by children. I had no reason to believe there was any reason for Kerry Jordan not to be on this horse on the day of her accident."

One significant area of testimony involved the construction that was taking place at Camp Widjiwagan during the summer of 2007. Ms. Jordan testified that new cabins were being built at the camp and that there was construction activity going on about 50 feet away from the entrance of the fenced-in ring where she was thrown. She suggested that Siena was

spooked by the movement and noise of the construction activity. Mr. Reece confirmed that there had been construction going on at the camp all that summer, but he testified that he didn't pay much attention to it because it was never a problem and he was focused on the horses. Mr. Myrick testified that construction was 700 or 800 yards away from the barns, and that you couldn't even see it from the ring.

Tim Norris and Leighton Sissom both testified on the basis of their reading of the depositions and the affidavits of the defendants' witnesses and on photographs they had been shown of the construction activity at the camp. They stated that in light of the two previous incidents with Siena and the presence of construction activity so close to the arena, it was likely that the horse bucked because it had been spooked by the construction noise and motion, and that the defendants were negligent in allowing Ms. Jordan to get on that horse under those circumstances.[2]

The trial court conducted a hearing on the defendants' motion on August 21, 2009, and then took the matter under advisement. On October 8, 2009, the court filed a detailed Memorandum Order, in which it discussed the facts of the case, including Ms. Jordan's apparent level of comfort around horses. The trial court concluded that Ms. Jordan's injury was due to "the inherent risks of equine activity,"and stated that the circumstances were not so exceptional "so as to remove the protections to equine sponsors that are intended by the [Equine Activities] Act." The court accordingly held that the defendants were entitled to summary judgment. This appeal followed.

## II. THE STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004).

---

[2]Rule 56.06 Tenn. Rules Civ. P. states that "[s]upporting affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters therein stated." It is not obviously clear that the affidavits of Mr. Norris and Dr. Sissom fully meet these requirements. Perhaps they were offered as expert opinions. In any event, the defendants did not object to the affidavits, and we have not relied upon them in determining the merits of this appeal.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. West Town Mall*, 130 S.W.3d at 763. We review the summary judgment decision as a question of law. *Id.* Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). Those requirements are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764.

The moving party has the burden of demonstrating it is entitled to judgment as a matter of law and that there are no material facts in dispute. *Martin*, 271 S.W.3d at 83; *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998) To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). If the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of a genuine issue of material fact. *Martin*, 271 S.W.3d at 84; *Hannan*, 270 S.W.3d at 5; *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d at 215).

In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001).

### III. THE EQUINE ACTIVITIES ACT

Under general principles of the common law, civil liability normally attaches for injuries caused by the negligent conduct of a party regardless of whether or not that conduct involves an equine. However, our legislature enacted the Equine Activities Act, Tenn. Code Ann. § 40-20-101 *et seq*. to encourage horsemanship and other equine activities by limiting liability for those involved in such activities. The purpose of the Act is set out in Tenn. Code Ann. § 44-20-101, which reads,

> The general assembly recognizes that persons who participate in equine activities may incur injuries as a result of the risks involved in such activities. The general assembly also finds that the state and its citizens derive numerous economic and personal benefits from these activities. It is, therefore, the intent of the general assembly to encourage equine activities by limiting the civil liability of those involved in such activities.

The scope of protection from liability provided by the Act is set out in Tenn. Code Ann. § 44-20-103:

> Except as provided in § 44-20-104, an equine activity sponsor, an equine professional, or any other person, which shall include a corporation or partnership, shall not be liable for an injury to or the death of a participant resulting from the inherent risks of equine activities. Except as provided in § 44-20-104, no participant or participant's representative shall make any claim against, maintain an action against, or recover from an equine activity sponsor, an equine professional, or any other person for injury, loss, damage, or death of the participant resulting from any of the inherent risks of equine activities.

Thus, a defendant who meets the definition of an equine activity sponsor or equine professional is shielded from liability for an injury suffered by a participant as the result of an inherent risk of equine activity. The definitions of the terms "equine activities," "equine activity sponsor," "equine professional," "inherent risks of equine activity" and "participant," are all set out in Tenn. Code Ann. § 44-20-102.

The disposition of several cases involving the Equine Activities Act has depended upon a close reading of some of those definitions. *See Friedli v. Kerr*, No. M1999-2810-COA-R9-CV, 2001 WL 177184 (Tenn. Ct. App. Feb. 23, 2001) (no Tenn. R. App. P. 11 application filed) (passengers in horse-drawn wagon were not participants in equine activities for purposes of the Act); *Smith v. Phillips*, No. M2009-00104-COA-R3-CV, 2010 WL 1221436 (Tenn. Ct. App. March 29, 2010) (no Tenn. R. App. P. 11 application filed) (friends who organized an informal trail ride were not "equine activity sponsors" or "equine professionals" for purposes of the Act).

The parties in the present case do not dispute that the defendants are equine activity sponsors, that the parties were engaged in equine activities, or that the plaintiff was a participant within the meaning of the Act. Thus, the defendants are entitled to immunity unless the facts presented bring it within the exceptions to immunity that are set out in Tenn. Code Ann. § 44-20-104. That statute reads, in pertinent part,

> (b) Nothing in § 44-20-103 shall prevent or limit the liability of an equine activity sponsor, an equine professional, or any other person if the equine activity sponsor, equine professional, or person:
> (1)(A) . . . .
>    (B) Provided the equine and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity and determine the ability of the participant to safely manage the

particular equine based on the participant's representations of the participant's ability;

      (2) Owns, leases, rents, or otherwise is in lawful possession and control of the land or facilities upon which the participant sustained injuries because of a dangerous latent condition that was known to the equine activity sponsor, equine professional, or person and for which warning signs have not been conspicuously posted;

      (3) Commits an act or omission that constitutes willful or wanton disregard for the safety of the participant, and that act or omission caused the injury.

      . . . .

The plaintiff argues that all three of these exceptions apply to her claim. For their part, the defendants do not place much emphasis on the provisions of Tenn. Code Ann. § 44-20-104. They argue instead that being thrown off a horse falls squarely within the "inherent risks of equine activity," and that "the heart of the statute" lies in the immunity it grants to equine activity sponsors for injuries resulting from the those risks. *See* Tenn. Code Ann. § 44-20-102(6).[3] While we agree that the accident herein could have resulted from conditions that are inherent in riding horses, that does not remove the statutory exceptions to immunity from the analysis. Those exceptions were created with knowledge and acknowledgment that there are risks inherent in equine activities.

The trial court granted the defendants summary judgment after finding that they were entitled to absolute immunity on the basis of the Equine Activities Act. In order to resolve this appeal we must, therefore, apply the provisions of the Act to the facts presented.

The defendants rely upon a case with many similarities to the present one, *Cave v. Davey Crockett Stables,* No. 03A01-9504-CV-00131, 1995 WL 507760 (Tenn. Ct. App. Aug. 29, 1995)(no Tenn. R. App. P. 11 application filed). In that case, the trial court granted

_____

[3]"Inherent risks of equine activities" means those dangers or conditions that are an integral part of equine activities, including, but not limited to:

    (A) The propensity of an equine to behave in ways that may result in injury, harm, or death to persons on or around them;

    (B) The unpredictability of an equine's reaction to such things as sounds, sudden movements, and unfamiliar objects, persons, or other animals;

    (C) Certain hazards such as surface and subsurface conditions;

    (D) Collisions with other equines or objects; and

    (E) The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within the participant's ability.

summary judgment to a stable business and a summer camp, finding them to be immune from liability for an injury suffered by a twelve year old camper when her leg was pinned between her horse and a tree during a trail ride. The court noted that the defendants had presented evidence that the circumstances of the injury were typical of "the inherent risks of equine activity" and stated that the plaintiff had not presented any countervailing evidence. We affirmed the trial court.

Unlike the plaintiff in *Cave*, however, the plaintiff in the present case has presented evidence which, if proved, could establish an exception to immunity set out in Tenn. Code Ann. § 44-20-104. It is undisputed that Ms. Jordan had some experience with horses, but she testified that she did not consider herself an experienced rider. Even if she was justifiably confident of her ability to handle most horses, there was no proof that she represented herself as capable of managing a horse that had a propensity to buck and that had already thrown two experienced riders.

Ms. Blair-Anton was a friend and co-worker of Ms. Jordan, and she had some knowledge of Ms. Jordan's equestrian experience. No evidence was presented, however, that she or any other of the YMCA's employees and volunteers made any effort to determine whether Ms. Jordan would be able to manage "the particular equine" which the defendants provided and which caused her injury.[4]

Ms. Blair-Anton obviously assumed that Ms. Jordan was capable of managing any horse in the stable, for she simply told her to "grab a horse." No one warned Ms. Jordan that Siena had thrown two experienced riders about ten days earlier, or attempted to determine whether she was experienced enough to safely handle such a horse. Thus, viewing the evidence before us in the light most favorable to the plaintiff, it appears to us that she raised a genuine question of material fact as to whether the defendants made "reasonable and prudent efforts to determine the ability of the participant . . . to safely manage the particular equine" that caused her injury. *See* Tenn. Code Ann. § 44-20-104(b)(1)(B). The defendants are therefore not entitled to judgment as a matter of law.

In order to avoid summary judgment on the basis of the immunity granted by the Equine Activities Act, only one of the exceptions to immunity set out in Tenn. Code Ann. § 44-20-104 need be demonstrated. The facts of this case, suggest, however, that a second exception may also applicable. The proof showed that there was construction activity in the vicinity of the fenced-in ring from which riders set out on trial rides. There was conflicting testimony as to the exact proximity of that activity to the location where the plaintiff was

---

[4]The defendants do not dispute that even though she was a volunteer, Ms. Blair-Anton could be considered an agent of the YMCA.

injured and as to how noisy or disruptive it was. There is also some question as to when and under what circumstances construction activity that is carried out in the open qualifies as "a dangerous latent condition." But viewing the evidence once again in the light most favorable to the plaintiff, it appears that she raised a genuine question of material fact as to whether the exception to immunity set out in Tenn. Code Ann. § 44-20-104(b)(2) applies.

Finally, the plaintiff argues that the defendants showed willful or wanton disregard for her safety by failing to insist that she wear a helmet before mounting Siena. However, that exception to immunity only applies to willful or wanton acts of omissions that cause injury. Ms. Jordan admits that she did not suffer a head injury, and she did not allege that the lack of a helmet contributed to her injury in any way. Thus, based upon the undisputed facts, Ms. Jordan is not entitled to judgment as a matter of law on this claim.

## IV.

The judgment of the trial court is reversed. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellees, the YMCA of Middle Tennessee and Camp Widjiwagan.

_____
PATRICIA J. COTTRELL, JUDGE