# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 12, 2011 Session

## DANA MOULTON, et al., v. DELORES MOULTON, et al.

**Appeal from the Circuit Court for Cheatham County**
**No. 5817     Hon. George C. Sexton, Judge**

**No. M2010-01185-COA-R3-CV - Filed May 17, 2011**

In this action plaintiff alleged she was injured when the roof on the deck at defendant's house fell upon her, causing injuries.  Defendant denied any responsibility for plaintiff's injuries and moved for summary judgment.  The Trial Court, in sustaining the summary judgment motion, held that none of the parties knew of any defect in the patio roof, and there was no evidence in the record of what actually caused the collapse of the roof.  The defendant possessed no constructive notice of any defective condition causing the collapse.  Plaintiffs have appealed and we affirm the judgment of the Trial Court and remand.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  FRANK G. CLEMENT, JR., J., and RICHARD H. DINKINS, J., joined.

Gregory D. Smith, Clarksville, Tennessee, and Dan W. Cook, Ashland City, Tennessee, for the appellants, Dana Moulton and Jamie Moulton.

Richard E. Spicer, Nashville, Tennessee, for the appellee, Delores Moulton.

## OPINION

Plaintiffs, Dana Moulton and spouse, Jamie Moulton, filed a Complaint against Delores Moulton, alleging that on September 3, 2006, when plaintiffs were visiting defendant's home, plaintiff Dana Moulton was sitting on defendant's patio steps when the

patio cover "came violently crashing down" on her, causing her severe injury. Plaintiffs alleged that defendant was negligent in failing to maintain the patio cover and keep it in good repair, and that defendant knew the patio cover was dangerous, or should have known, as it was in need of repair/maintenance. Further, that there had been high winds in the area previously.

Defendant answered, denying any negligence, pled affirmative defenses of intervening/superseding event, and the doctrine of comparative fault. Plaintiffs then amended their Complaint to add Murray Hunter as a defendant, alleging that he was the contractor who built/erected the patio cover for Moulton. Hunter filed an Answer denying negligence.

Defendant Moulton filed a Motion for Summary Judgment, and stated that defendant had no notice of any alleged problem with the patio cover, and thus had breached no duty to plaintiffs. Defendant also stated the incident was unforeseeable. Defendant filed an excerpt from the deposition of plaintiff Dana Moulton, wherein she testified that she was at her mother-in-law's house (defendant Delores Moulton) regularly in the months preceding the incident, and had regularly sat on the patio under the patio cover with her mother-in-law on numerous occasions. She testified that, on the day of the incident when the patio cover fell, she had not noticed anything unusual about it, and that she was knocked unconscious when something hit her from behind.

She further testified that she had no idea why the patio cover fell, and that she and her mother-in-law never had any conversations about it prior to that day. She said it appeared sturdy and secure, and there was no visible rotting or problems with it, and concluded that her mother-in-law did nothing to contribute to the patio cover falling.

Defendant Moulton also filed an excerpt from the deposition of her son, Jamie Moulton, wherein he testified that he had been to his mother's house several times before the day in question, and had never noticed any type of problem with the patio or the cover. He testified that he had never heard his mother talk about any type of problem, and that his mother had never expressed to him that anything was wrong with the patio cover. He concluded that they had no warning, no sound or nothing to indicate that it was going to fall before the actual collapse.

Jamie further testified that in the spring before this incident happened, there were tornadoes that passed through the area and he thought the winds from same had perhaps shaken the patio cover and pulled it loose, but he further testified that he had been to his mother's house numerous times after the storms, and the patio cover looked fine to him.

Moulton filed a Statement of Undisputed Facts, and stated that plaintiffs had been to defendant's home numerous times, admitted that they had never seen any problem with the patio cover, and that defendant also knew of no problems with the cover. She stated that she had no reason to think that the patio cover would fall. Further, in her Affidavit, she stated the patio roof in question was built in 2001 by a contractor, and affirmed that she never had any problems with it, that it always appeared to be in good condition and structurally sound, and that she regularly sat under the cover.

Plaintiffs filed a Response, and referred to defendant Moulton's deposition testimony that she had high winds and storms where she lived, and had, in prior years, filed claims for storm damage and had her roof and other things repaired due to storm/wind damage. Further, she admitted that a tornado came through the area in the year prior to the incident and in the year in question, and there were high winds "all the time". She further testified that after high winds occurred prior to the incident, one of her outbuilding blew off of its foundation, but that she did not have anyone come out and inspect any of her property.

Further in her testimony, she testified that she had an old patio cover or roof replaced with the new one approximately five years prior to the accident. She testified that the old one had been there for about ten years and needed to be replaced.

The Trial Court issued a Memorandum Opinion and Order, and found that there was no question that none of the parties involved knew of any problem with the patio cover prior to its collapse, and that there was no testimony as to why it actually fell. The Court found that simply because there had been high winds in the past, this was insufficient to put the defendant on notice that such winds caused a structural defect or dangerous condition to the property as a result. The Court held that since defendant had no actual or constructive notice of any problem with the porch roof, summary judgment was appropriate. The Court then ruled that this Order would be final pursuant to Tenn. R. Civ. P., Rule 54, and plaintiffs then appealed to this Court.

The issue on appeal is whether the Trial Court erred in granting summary judgment to defendant Moulton?

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83 (Tenn. 2000). In reviewing a case that has been decided by summary judgment, the Supreme Court has stated:

The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the

judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied.

A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The party seeking the summary judgment has the ultimate burden of persuasion that there are no disputed, material facts creating a genuine issue for trial and that he is entitled to judgment as a matter of law. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case....

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. In making that assessment, th[e] Court must discard all countervailing evidence.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363–64 (Tenn. 2009)(citations omitted).

The essential elements that must be established in a premises liability case, are: [1] a duty of care owed by the defendant to the plaintiff; [2] conduct by the defendant falling below the standard of care amounting to a breach of that duty; [3] an injury or loss; [4] causation in fact and [5] legal cause. *See Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998).

In premises liability cases, it is the superior knowledge of the condition of the premises possessed by the owner that triggers liability. *See Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994). Before the property owner may be held liable for negligently allowing a dangerous or defective condition to exist on the premises, the plaintiff must establish: [1] the condition was caused or created by the owner or his/her agent, or [2] if the condition was created by someone other than the owner or his/her agent, that the owner had actual or constructive notice that the condition existed prior the accident. *See Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). A condition will be considered dangerous if it is reasonably foreseeable that the condition will cause injury and that a reasonably careful person would not maintain the premises in such a state. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

In this case, plaintiffs allege that the condition of the porch roof was dangerous and

that it was reasonably foreseeable that this dangerous condition would cause injury. Plaintiffs have not shown, however, that defendant Moulton had any actual or constructive notice of the condition's existence prior to the accident. Defendant Moulton testified in her deposition and her affidavit that she had the porch roof installed about five years prior to the accident, and that she had noticed no problems with it and believed that it was safe and secure. Plaintiffs themselves admitted they saw no problems with the porch roof and believed that defendant Moulton knew nothing of its potentially dangerous condition or she would have remedied the same. Both plaintiffs and defendant testified that they gathered on this porch on a regular basis and sat beneath the porch roof, just as they were doing on the day of the accident, and that none of them had ever noticed anything about it that would lead them to believe it would fall. There is nothing in this record to establish that the defendant property owner had any actual or constructive knowledge that a dangerous condition existed. Plaintiffs argue that there had been a tornado in the area in the spring before the incident with high winds, and that defendant Moulton should have had the porch roof inspected after the winds to ensure that the storm had not caused the porch roof to pull apart from the house. Plaintiffs presented no proof that this is, in fact, what happened or that the tornado or high winds even contributed to the condition of this porch roof. In effect, plaintiffs' assertion that the tornadic activity gave the defendant constructive notice of a defective condition on her premises is sheer speculation on this record, because there is no evidence as to what actually caused this roof to fall. Plaintiffs bear the burden of showing that this incident was reasonably foreseeable to defendant, and they have failed to show this.

The case of *Paradiso v. Kroger Co.*, 499 S.W.2d 78 (Tenn. Ct. App. 1973), is instructive on our analysis of this case. In *Paradiso*, the plaintiff was injured when she was shopping in Kroger, scraped her leg on a piece of metal protruding from the bottom of a rack, and fell. As we explained:

On May 9, 1970, between 4:00 and 5:00 p.m., 79 year old Rose L. Paradiso went into defendant's store for the purpose of buying some whipping cream. She fell when her leg scraped against a piece of metal projecting from a display rack. The display rack was near a checkout lane with the back of the rack against the manager's office. The projecting metal was a piece of molding on the lower shelf which was six to eight inches above the floor. Apparently a nail which was found on the floor had come loose from the molding permitting it to project some four or five inches from the display rack into the checkout lane.

Mrs. Paradiso had been to the store before but had never observed the display rack. She never saw the projecting metal but as soon as the metal molding cut her leg, she fell.

* * *

In cases such as this case where liability is based on constructive knowledge of the dangerous or defective condition, there must be material evidence from which the trier of fact could conclude the condition existed for sufficient time and under such circumstances that one exercising reasonable care and diligence would have discovered the danger. . . . In this case we have absolutely no proof as to what caused the protruding metal to come loose from the display rack nor is there any proof as to when the metal came loose or the length of time it had been protruding.

In this case when the evidence is reviewed in the light most favorable to the plaintiff, we find no proof from which it can be logically inferred the defendant Kroger breached its duty and obligation to plaintiff of using ordinary care to maintain the premises in a reasonably safe condition. To establish constructive notice requires some material competent evidence from which it can be logically inferred the proprietor, by the exercise of ordinary care, would have or should have discovered the dangerous condition.

Here there is absolutely no proof as to the condition of the display rack prior to the molding coming loose. Neither is there proof as to how or when the molding came loose or what length of time and under what circumstances the defective condition existed. In the absence of evidence on those vital elements any conclusion of the trier of fact would have to be based on conjecture and speculation which would violate the cardinal rule that such conclusion must be supported by evidence.

Therefore, since there is no evidence to support a conclusion the defendant knew or should have known of the defective condition of the rack, we sustain the trial judge's action of directing a verdict.

*Id*. at 79.80.

In this case there is no evidence as to what actually caused the porch roof to fall and how long the condition had existed, and under these circumstances we agree with the Trial Judge and affirm the summary judgment. The cost of the appeal is assessed to plaintiffs Dana and Jamie Moulton.

_____
HERSCHEL PICKENS FRANKS, P.J.