IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, August 29, 2011

**JAMES W. SHARP, v. GREG WILSON, et al.**

**Appeal from the Circuit Court for Bledsoe County**
**No. 2010-CV-4794    Hon. Buddy D. Perry, Judge**

**No. E2011-00270-COA-R3-CV-FILED-OCTOBER 19, 2011**

Essentially, plaintiff's Complaint sets forth numerous refusals by the prison in denying him appropriate and proper medical treatment for his conditions. In their Answer, defendants denied the Complaint's allegations and subsequently moved for summary judgment, which the Trial Court granted. On appeal, we hold there are disputed issues of material facts and the summary judgment is reversed, as to the health administrator and the nurse practitioner. The summary judgment granted to the Warden of the Southeastern Tennessee State Correctional Facility is affirmed.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed in
Part and Reversed in Part.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

James W. Sharp, Pikeville, Tennessee, *pro se.*

Robert E. Cooper, Jr., Attorney General and Reporter, Joseph F. Whalen, Associate Solicitor General, and Lee Pope, Assistant Attorney General, Nashville, Tennessee, for the appellees.

# OPINION

## Background

Plaintiff is incarcerated, and filed a *pro se* Complaint against Greg Wilson, Health Administrator, Helen Redding, Nurse Practitioner, and Jim Morrow, Warden of the Southeastern Tennessee State Regional Correctional Facility ("STSRCF"). Plaintiff alleged that his civil rights had been violated, and defendants were guilty of negligence/recklessness. He averred that in 1990, he had a car accident which caused him to have deep vein thrombosis, and that he had been required since that time to continuously wear a 40-50 pound compression stocking for his right leg to prevent ulcers, pain, and possible death. He stated that his stocking ripped on April 8, 2008, when he was at Charles Bass Correctional Facility, and that before he could get a new one, he was transferred to STSRCF. He alleged that he was in severe pain when he arrived at STSRCF, and that he immediately informed them of his need for the compression stocking and the fact that it had been prescribed for him.

He alleged that he saw the nurse practitioner several times, filed requests and grievances, and sent letters attempting to get the required stocking, but to no avail. He averred that he complained to the warden for his lack of medical care, but received no response. He averred that he finally had to have his family members try to get the stocking, at a cost of $668.10, but they were not successful due to a lack of medical orders from STSRCF.

Plaintiff attached copies of his numerous request forms and the responses to the requests vary from "it has been ordered" to "the prison cannot provide it but your family can" to "prison can get it but not that exact type". He also attached an Affidavit of Linda Turner (who is apparently plaintiff's girlfriend), wherein she stated that she tried numerous ways to get the stocking for plaintiff, but to no avail. She stated that she visited plaintiff, and saw that he was in great pain, and that his leg and foot were in a very bad condition.

Plaintiff also filed an Affidavit, stating that when he arrived at Charles Bass on April 8, 2008, he had a compression stocking, but it ripped. He stated the doctor there said she would order a new one, but it never came. Plaintiff stated that in the meantime, the ulcer on his foot came back, and he had to endure having it cleaned, which was very painful, and when he was sent to STSRCF on September 9, 2008, he was in a lot of pain and very poor health upon arrival there, due to the problems with his leg. Plaintiff stated that Nurse Redding told him the only way he could get it was to have his family order it and send it. Plaintiff said that he tried to do this but was unable to get the right one. Further, that they refused to change his dressing on the weekends, that he was unable to walk but they would not provide crutches, and that his ulcer was draining all the time. Plaintiff's affidavit details

-2-

through many pages the suffering that he endured.

Defendants filed an Answer, admitting that when plaintiff came to STSRCF, he had a venous stasis ulcer on his right ankle and was walking on crutches. Defendants stated that plaintiff exhibited ongoing, persistent, uncooperative and non-compliant behavior with regard to his medical treatment, and that he refused to take his prescribed medications, failed to appear for appointments, and refused to cooperate with the cleaning of the wound, but they admitted that the Jobst stocking was prescribed, but was not approved by the supervising medical management company. They stated that plaintiff refused to accept any substitute stocking that was approved by the management company. Defendants denied that there was any deliberate indifference, negligence or recklessness, and pled the affirmative defenses of qualified immunity, sovereign immunity, failure to exhaust administrative remedies, etc.

Defendants then filed a Motion for Summary Judgment, arguing that there could not be a showing of deliberate indifference where plaintiff simply alleged that he didn't get the type of medical care that he requested or expected. They argued that a dispute over the adequacy of medical treatment did not rise to the level of a constitutional violation, and at most amounted to a negligence claim. Further, that the Court had no jurisdiction to hear the negligence claim, because negligence claims against a state employee had to go to the Tennessee Claims Commission.

Defendants filed a Rule 56 Statement of Undisputed Facts.

Defendants attached an Affidavit of Greg Wilson, who stated that he was Health Services Administrator fo STSRCF, and that his duties included general oversight and management of the health services unit, but that he was not a licensed medical provider and did not diagnose or treat patients. He stated that when plaintiff arrived in September 2008, the treating physician ordered a Jobst compression stocking to treat plaintiff's ulcer, and that plaintiff repeatedly requested same. He stated that the medical management company declined to cover the cost of the Jobst stocking, but other stockings were offered, which plaintiff refused. Wilson stated that he told plaintiff he could get the stocking from his family, and that plaintiff was not denied medical attention, and suffered no harm.

Defendants also filed an Affidavit of Helen Redding, who stated that she was a nurse practitioner and that she treated plaintiff's medical issues. She stated that plaintiff was seen by the doctor shortly after his arrival and the doctor ordered a Jobst compression stocking. Redding stated the doctor ordered plaintiff to continue the unaboot dressings while waiting for the stocking to arrive. Redding stated that plaintiff was provided a unaboot leg dressing to treat his ulcer. She stated that plaintiff was argumentative, uncooperative, and non-compliant, that he had refused to appear for appointments to change his dressing and refused

to take prescribed medication.

Redding stated plaintiff received proper timely medical care and suffered no harm, and that his ulcer was now resolved.

The Trial Court, acting on the Motion for Summary Judgment, entered an Order of Dismissal, stating that defendants had averred that plaintiff was uncooperative with his medical treatment, that he was offered acceptable and similar compression stockings which he refused to accept, and that he was permitted to obtain the stocking he wanted from his family. The Court found that there was no deliberate indifference where plaintiff merely challenged the adequacy of his treatment, and that Morrow was not involved.

Plaintiff filed a timely Notice of Appeal, and the issue raised on appeal is whether the Trial Court erred in granting summary judgment to defendants?

## Discussion

As our Supreme Court has previously stated:

> The granting or denying of summary judgment is a matter of law, and we therefore review the trial court's grant of summary judgment . . . *de novo*. *Blair v. W. Town Mall,* 130 S.W.3d 761, 763 (Tenn. 2004). The party moving for summary judgment has the burden of introducing or identifying admissible facts in the record showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Mills v. CSX Transp., Inc.*, 300 S.W.3d 627, 631 (Tenn. 2009); *see* Tenn. R. Civ. P. 56.04.

*Blue Bell Creameries, LP v. Roberts*, 333 S.W.3d 59 (Tenn. 2011). Our Supreme Court has also stated:

> Summary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). In *Byrd*, this Court set out the basic principles involved in determining whether a motion for summary judgment should be granted. The moving party has the ultimate burden of persuading the court that "there are no disputed, material facts creating a genuine issue for trial ... and that he is entitled to judgment as a matter of law." *Byrd,* 847 S.W.2d at 215. If the moving party makes a properly supported motion, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Id*. To meet its burden of production and shift the burden to the nonmoving

-4-

party, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense. *Id*. at 215 n. 5. If the moving party does not satisfy its initial burden of production, the court should dismiss the motion for summary judgment. *See id.* at 215. Summary judgment should be granted only when, with the facts viewed in favor of the nonmoving party, it is clear that no genuine issue of material fact exists. *Id*. at 210–11.

*Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 5 (Tenn. 2008). The Court went on to explain:

> The Court explained that a moving party has only two methods to shift its burden: (1) the moving party may affirmatively negate an essential element of the nonmoving party's claim; or (2) the moving party may establish an affirmative defense.

Courts must view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. *Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363–64 (Tenn. 2009). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion, and in making that assessment, the Court must discard all countervailing evidence. *Id.*

In this case, the Trial Court did not view the evidence in the light most favorable to plaintiff and discard all countervailing evidence in making its ruling. The Trial Court stated that defendants "averred" that plaintiff was argumentative, uncooperative, and non-compliant, that other acceptable and similar compression stockings were provided but refused by plaintiff. The Court also stated that defendants had "averred" that plaintiff was permitted to receive the necessary stocking from his family, which formed the basis for the Court's grant of summary judgment.

What plaintiff alleged in his Complaint, however, and supported with his own affidavit and the affidavit of Ms. Turner, is that he was allowed to languish in prison for months in great pain while awaiting the prison health services unit to get him the necessary stocking. He was told (and the responses demonstrate) that it had been ordered, that it was coming, that they couldn't get it, that alternatives were available, etc., but plaintiff stated that he never received the correct stocking to treat his medical condition. His affidavit detailed several violations of his lack of treatment.

While defendants attempted to frame this claim as plaintiff's disagreement with the medical treatment he received, plaintiff has alleged a course of conduct by the prison health services staff when viewed in the light most favorable to him, states a constitutional

violation. Defendants cite this Court to cases which defendants claim lend support to their argument that disputes over adequacy of treatment are "attempts to constitutionalize claims that are, if anything, state law negligence claims". *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Fitzke v. Shappell*, 468 F.2d 1972 (6th Cir. 1972). A review of these cases, however, demonstrates that they actually support plaintiff's position.

In *Fitzke,* the plaintiff alleged that he was arrested after passing out and striking a telephone pole with his car due to a bleeding brain lesion. *Fitzke v. Shappell*, 468 F.2d 1972 (6th Cir. 1972). The arresting officer allegedly expressed no concern for plaintiff's physical condition, even though plaintiff communicated his need for medical attention. *Id.* Plaintiff was taken to the county jail at around 1:30 a.m., where he again complained of pain and numbness and expressed a need for medical attention, but was denied same for 12 hours. *Id.* When plaintiff finally did receive medical attention, it was discovered that he was suffering from a serious brain injury, and plaintiff had to "undergo a craniotomy and have the damaged portion of his brain removed." Plaintiff alleged that the extent of his brain damage was due to defendants' delay in giving him medical attention. *Id.*

The defendants filed a motion to dismiss and/or for summary judgment, and supported same with affidavits from employees of the county jail, as well as a physician who was called by the jailers. The jail employees stated that they examined plaintiff after coming on shift the morning after plaintiff was arrested, and that after examining him they called a doctor. The doctor stated that he examined plaintiff and eventually did send him to the hospital for treatment. The trial court granted summary judgment on plaintiff's claims. *Id.*

The United States Court of Appeals for the Sixth Circuit recognized that claims of deprivation of/inadequate medical care by a person being held in jail can give rise to a constitutional violation, stating:

> An individual incarcerated, whether for a term of life for the commission of some heinous crime, or merely for the night to "dry out" in the local drunk tank, becomes both vulnerable and dependent upon the state to provide certain simple and basic human needs. Examples are food, shelter, and sanitation. Facilities may be primitive but they must be adequate. Medical care is another such need. Denial of necessary medical attention may well result in disabilities beyond that contemplated by the incarceration itself. The result may be crippling injury, as alleged here, or, as the Stiltner court pointed out, the very deprivation of life itself, since, restrained by the authority of the state, the individual cannot himself seek medical aid or provide the other necessities for sustaining life and health.

*Fitzke*, at 1076.

The Court found that plaintiff had alleged in his Complaint that he complained of pain and numbness, that he requested medical attention, and that he did not receive same for many hours. *Id.* The Court held that the Trial Court's grant of summary judgment was improper, and noted that cases involving civil rights violations should not be dismissed at the pleading stage unless it "appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Id.* at 1077, f.n. 6.

The Court also addressed the fact that defendants had filed affidavits in support of their motion which were uncontroverted by plaintiff. *Id.* The Court noted that while the non-moving party in a summary judgment situation would usually need to file affidavits in response to show a genuine issue of material fact, the Court stated, "[t]hat affidavits filed in support of a motion for summary judgment are not controverted does not necessarily require its being granted, although the statements contained therein must be accepted as true. One moving for summary judgment has 'the burden of showing the absence of a genuine issue of any material fact, and for these purposes the material . . . [which the appellees] lodged must be viewed in the light most favorable to the opposing party.'" *Id.* at 1077.

That Court held that the affidavits did not negate the essential allegations of the Complaint, and that the affidavits did not demonstrate the absence of any issue of material fact, and that summary judgment was improperly granted. *Id.*

Similarly, in *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976), the plaintiff alleged that he was incarcerated at the county jail awaiting trial, and that he informed jail personnel upon his admission that he suffered from an ulcer and required a special diet and medication. Plaintiff's requests were denied, and jail officials stated that they would not grant his requests until ordered to do so by a doctor. *Id.* Despite his requests for treatment, plaintiff was not taken to see a doctor, and began to suffer abdominal pain. *Id.* Finally, after six days, plaintiff began to vomit blood, and when this was brought to the jailers' attention, the response was to give him a mild antacid.

The United States Court of Appeals for the Sixth Circuit stated, "[w]e believe that a prisoner states a proper cause of action when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Id.* at 860. The Court went on to state, "a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering." *Id.* The Court thus reversed the trial court's dismissal of plaintiff's Complaint. *Id.*

As in *Fitzke*, plaintiff did ultimately receive some medical care, but he has alleged

that the care he received was insufficient and untimely, and resulted in great pain and suffering to him. He stated that he was denied the compression stocking he needed, and that the substitute stockings were insufficient for his medical needs. As a result, he suffered additional pain and injury. Plaintiff also stated that the blood thinner (Coumadin) he was given caused him terrible side effects and that he feared he would have a heart attack, but his requests for another medication were denied, since he had refused to take Coumadin. Plaintiff's affidavits support his allegations.

Defendants' affidavits stated that plaintiff was given medical care that was timely, that he was offered substitute stockings, but refused, and that he was allowed to get the stocking from his family. They also stated that plaintiff was uncooperative and argumentative, and they conclude plaintiff suffered no harm. As in *Fitzke,* these affidavits do not establish that there is no genuine issue of material fact in this case. They do not address many of plaintiff's factual statements, but instead simply focus on the fact that alternative stockings were offered, and that plaintiff's ulcer ultimately healed. They do not address his allegations regarding lack of pain medication, lack of crutches, lack of proper orders so that his family could obtain the stocking, the discontinuation of his unaboot dressing, the side effects he had with the Coumadin, etc. We find defendants have failed to "affirmatively negate an essential element of the nonmoving party's claim; or show that the nonmoving party cannot prove an essential element of the claim at trial."

Defendants argue that summary judgment was properly granted, because it was not shown that Morrow was involved in any alleged deprivation of plaintiff's constitutional rights, which is required for supervisor liability in civil rights actions. Plaintiff alleged that he sent a letter to Morrow letting him know of his problems, but defendants are correct that "knowledge of a prisoner's grievance and subsequent failure to remedy the prisoner's complaint is still insufficient to impose supervisory liability under §1983." *Henry v. Pogats*, 35 F.3d 565 (6th Cir. 1995). Accordingly, without a showing that Morrow somehow participated in any unconstitutional conduct, summary judgment was properly granted to him.

As to plaintiff's state law claims, defendants argue that these claims were within the exclusive jurisdiction of the Tennessee Claims Commission pursuant to Tenn. Code Ann. §9-8-307, since the defendants were state employees, and that the Trial Court properly dismissed them. Defendants Wilson and Redding have not been shown to be state employees, however, by affidavit or otherwise. This Court has recognized in previous cases that sometimes prison personnel, especially health services personnel, are actually employees of contracted agencies and not of the State, and thus that Tenn. Code Ann. §9-8-307 would not apply. *See Younger v. State*, 205 S.W.3d 494 (Tenn. Ct. App. 2006). Essentially, the Trial Court did not explicitly analyze or rule upon plaintiff's state law claims in its Order of Dismissal, and upon remand, this issue will appropriately be addressed by the Trial Court.

We uphold the summary judgment granted to Jim Morrow, Warden of the Southeastern Tennessee State Regional Correctional Facility, but reverse the summary judgment as to the remaining defendants, and remand for further proceedings consistent with this Opinion.

The cost of the appeal is assessed one-half to plaintiff and one-half to Wilson and Reading.


_____
HERSCHEL PICKENS FRANKS, P.J.