IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 12, 2019 Session

## SUSAN KNIGHT AS EXECUTRIX OF THE ESTATE OF ELTON M. JOHNSON v. HORSE CREEK ROCK INC.

**Appeal from the Chancery Court for Hardin County**
**No. CH-273     Carma Dennis McGee, Chancellor**

_____

**No. W2018-01014-COA-R3-CV;**
**No. W2018-01294-COA-R3-CV**

_____

This is a dispute over a lease agreement for property upon which the lessor permitted the lessee to mine limestone. After the original lessor died, his estate demanded that the lessee provide weight tickets as provided in the lease agreement. When the lessee failed to comply, the estate filed suit and the lessee counterclaimed. The trial court granted summary judgment to the estate on its claim for declaratory judgment and declared that the lease agreement was terminated. The court also granted summary judgment in favor of the estate on the lessee's counterclaim for intentional interference with a business relationship. We affirm the decision of the trial court in all respects.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Samuel Wayne Hinson, Lexington, Tennessee, for the appellant, Horse Creek Rock, Inc.

Jonathan O. Steen, Jackson, Tennessee, for the appellee, Susan Knight.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Elton M. Johnson owned property on Highway 69 in Savannah, Tennessee and entered into a lease agreement with Horse Creek Rock, Inc. ("HCR" or "Horse Creek") in April 2012 to allow the company to mine limestone on the property. Under the terms of the lease agreement, HCR was to provide Mr. Johnson with "copies of weight tickets

used in determining the production royalty payment" paid each month in which limestone was mined.

Mr. Johnson died testate on December 11, 2014, and Susan Knight was appointed executrix of the estate. Ms. Knight began asking HCR for copies of the weight tickets for monies paid to Mr. Johnson and his estate under the lease agreement. On January 10, 2015, Ms. Knight requested an accounting in writing, but HCR failed to provide copies of the weight tickets. On April 2, 2015, Ms. Knight filed a complaint against HCR for an accounting of its business activities on the property. In a letter dated May 6, 2015, Ms. Knight gave HCR formal notice of its breach of the lease agreement by failing to provide copies of the weight tickets (among other actions). In accordance with the lease agreement, HCR had thirty days to cure its default; otherwise, the estate had the right to terminate the lease.

In light of HCR's continued failure to provide copies of the weight tickets, Ms. Knight notified HCR, on January 14, 2016, that the estate was exercising its right to terminate the lease agreement and asked HCR to vacate the leased premises. Horse Creek refused to leave the leased premises and continued to mine limestone there. Ms. Knight amended the complaint on March 1, 2016, to include claims for breach of contract and declaratory judgment. She sought a declaration that she had properly exercised the estate's option to terminate and that the lease had been terminated. In its answer to Ms. Knight's amended complaint, HCR stated that "actual weight tickets were never given to Mr. Johnson but were available upon request." Horse Creek asserted counterclaims for intentional interference with a business relationship, inducement to breach a contract, intentional interference with a contract, and slander.

The estate filed a motion for summary judgment on its claim for declaratory judgment on April 8, 2016. Following a hearing, the trial court made findings of fact and conclusions of law in an order entered on September 6, 2016, in which it granted the estate's motion for summary judgment on the declaratory judgment claim and declared the lease agreement to be terminated.

After the trial court entered summary judgment in favor of the estate, Ms. Knight filed a motion seeking a restraining order and temporary injunction to enjoin HCR from continuing to mine or remove limestone from the estate's property. On September 19, 2016, the trial court issued a restraining order and set a hearing on the temporary injunction. Horse Creek filed a motion to amend the trial court's findings of fact and conclusions of law and amend the judgment; a motion to alter or amend; or, alternatively, a motion to stay execution pending appeal. The trial court granted Ms. Knight's request for a temporary injunction and, in an order entered on November 4, 2016, denied HCR's motions.[1]

---

[1] Horse Creek filed a motion pursuant to Tenn. R. App. P. 7 asking this Court to review the trial court's

On May 1, 2018, the trial court entered an amended order granting summary judgment on the claim for declaratory judgment and designated the order to be final pursuant to Tenn. R. Civ. P. 54.02. Horse Creek filed its notice of appeal on June 4, 2018. On September 28, 2018, this Court ruled that there was no final order. Thereafter, Ms. Knight voluntarily dismissed the estate's remaining claims for an accounting of business activities and breach of contract, and the trial court entered an order of voluntary dismissal on October 5, 2018.

The trial court dismissed HCR's counterclaims for inducement to breach a contract, intentional interference with a contract, and slander for failure to state a claim by order entered on March 1, 2018. Ms. Knight filed a motion for summary judgment regarding HCR's claim for intentional interference with a business relationship. In support of its motion, the estate filed a statement of undisputed facts. On June 8, 2018, the trial court granted Ms. Knight's motion for summary judgment on HCR's claim for intentional interference with a business relationship, and HCR appealed from that order.

The two appeals have been consolidated. The issues raised by HCR are: whether the trial court erred (1) in failing to rule that any alleged breach of the lease agreement by HCR was minor, not material; (2) in failing to rule that the doctrine of waiver precluded the estate from objecting to HCR's alleged breach of the lease agreement; and (3) in granting the estate's motion for summary judgment on HCR's claim for intentional interference with a business relationship.

STANDARD OF REVIEW

A trial court's award of summary judgment does "not enjoy a presumption of correctness on appeal." *Biancheri v. Johnson*, Nos. M2008-00599-COA-R3-CV, M2007-02861-COA-R3-CV, 2009 WL 723540, at *5 (Tenn. Ct. App. Mar. 18, 2009) (citing *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003)). Appellate courts review a trial court's decision on a motion for summary judgment de novo. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04; *see also Rye*, 477 S.W.3d at 261-62 (quoting TENN. R. CIV. P. 56.04). If the party moving for summary judgment does not bear the burden of proof at trial, as here, the movant will be entitled to succeed on the motion if he or she "affirmatively negat[es] an essential element of the nonmoving party's claim or . . . demonstrate[s] that the nonmoving party's evidence *at the summary*

---

ruling denying its motion to stay execution pending appeal. We denied the motion.

*judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264; *see also* Tenn. Code Ann. § 20-16-101.

When determining whether a genuine issue of material fact exists, a court must take the "strongest legitimate view of the evidence" in favor of the non-moving party "and discard all countervailing evidence." *Davis v. McGuigan*, 325 S.W.3d 149, 157 (Tenn. 2010) (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). A genuine issue of material fact exists "if the undisputed facts and inferences drawn in the [non-movant's] favor permit a reasonable person to reach more than one conclusion." *Id.* Then, "'if there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied.'" *Johnson v. City Roofing Co.*, No. W2003-01852-COA-R3-CV, 2004 WL 1908794, at *2 (Tenn. Ct. App. Aug. 25, 2004) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993)); *see also Dooley v. Everett*, 805 S.W.2d 380, 383 (Tenn. Ct. App. 1990).

ANALYSIS

I. Breach of contract.

A. Materiality.

Horse Creek's first argument is that, although HCR may have been in technical breach of the lease agreement, any breach that occurred was minor and had no impact on either party's ability to enjoy the benefit of their bargain. Therefore, HCR asserts, the trial court erred in terminating the agreement.

The relevant terms of the lease agreement provide as follows:

> If the LESSEE should not comply with any of the terms and conditions of this agreement, the LESSEE shall have thirty (30) days after written notice from LESSORS, to proceed to cure the default or the LESSORS shall have the right to terminate this agreement.

> As consideration of the lease on the property, the LESSEE shall pay the following royalties:

> PRODUCTION ROYALTIES—the LESSEE shall pay to the LESSOR, as production royalties on all merchantable limestone mined, removed, and sold from the property, the sum of $0.20 per ton[ ] (2000 pounds) or 5% of the selling price F.O.B. whichever is greater.

> Production royalty payment shall be paid to the LESSORS no later than the 20th day of the month, following any month in which merchantable

- 4 -

limestone is mined, removed, and sold from the property. With each production royalty payment, the LESSEE shall provide LESSOR with copies of weight tickets used in determining the production royalty payment.

Instead of providing Mr. Johnson with weight tickets, HCR provided him with ticket summaries.

A contractual breach must be material in order to justify relieving the non-breaching party of its obligations under the contract. *M & M Elec. Contractor, Inc. v. Cumberland Elec. Membership Corp.*, 529 S.W.3d 413, 423 (Tenn. Ct. App. 2016). Tennessee cases have adopted the following factors in considering whether a breach is material:

> "(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

*Id.* (quoting *Forrest Constr. Co. v. Laughlin*, 337 S.W.3d 211, 225-26 (Tenn. Ct. App. 2009)).

Although all of these factors do not apply in every situation, we believe that several are pertinent here. As HCR acknowledges in its brief, the purpose of the weight tickets was to inform Mr. Johnson how his royalty payments were being calculated. Horse Creek asserts that the ticket summaries provide the same information. The weight tickets, however, were prepared at the time when the limestone was weighed and sold to the buyers, thus, they provide the best evidence of the appropriate price for a particular load of limestone. The lease agreement entitled Mr. Johnson to see those weight tickets. Without the weight tickets, Mr. Johnson did not receive the full benefit he expected to receive from the lease agreement because he was not able to check the weight tickets against the royalty figures (factor (a)). The ticket summaries did not offer a substitute because, without the original tickets, there was no original source by which to verify the numbers on the ticket summaries (factor (b)). Furthermore, HCR's failure and unwillingness to provide the weight tickets does not comport with good faith and fair

dealing because these are records that the company should maintain in the regular course of its business, and it offered no reason for its refusal to provide them (factor (e)).

We reject HCR's assertion that the lease agreement provision requiring it to provide weight tickets was not material.

B. Waiver.

Horse Creek's next argument is that Mr. Johnson waived the right to enforce the weight ticket provision by accepting HCR's ticket summaries for two years without objecting. Horse Creek asserts that, by accepting the ticket summaries, Mr. Johnson "led HCR to reasonably believe that ticket summaries were acceptable and that the failure to provide individual weight tickets would not be an issue."

A party claiming waiver has the burden of proof by a preponderance of the evidence. *Guesthouse Int'l, LLC v. Shoney's N. Am. Corp*, 330 S.W.3d 166, 202 (Tenn. Ct. App. 2010). Waiver may be proven by "'express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was [the party's] intention and purpose to waive.'" *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 722 (Tenn. Ct. App. 1998) (quoting *Baird v. Fidelity-Phenix Fire Ins. Co.*, 162 S.W.2d 384, 389 (Tenn. 1942)). The doctrine of waiver is "'designed to prevent the waiving party from lulling another into a belief that strict compliance with a contractual duty will not be required, and then either suing for noncompliance or demanding compliance for the purpose of avoiding the transaction.'" *Guesthouse*, 30 S.W.3d at 201 (quoting 13 Richard A. Lord, WILLISTON ON CONTRACTS § 39:15 (4th ed. 2009) (footnotes omitted)).

Horse Creek's reliance on the doctrine of waiver as a defense is misplaced. In its answer to the estate's amended complaint, HCR admitted that, although actual weight tickets were not provided to Mr. Johnson, they "were available upon request." In response to the estate's motion for summary judgment, HCR presented the affidavit of its employee, Sheree Hill. Ms. Hill's affidavit states, in pertinent part:

2. Each month we would send Mr. Johnson a royalty report of all the rock that was sold that month.
3. We never sent Mr. Johnson copies of the weight tickets or customer usage reports, but they were always available upon his request.
4. After Mr. Johnson's death, the Executrix of his estate, Susan Knight began asking for the weight tickets to be furnished to her each month.

In light of the availability of weight tickets upon request, Mr. Johnson's acceptance of the weight summaries does not show an intent on his part to waive the requirement of weight tickets.[2]

The evidence does not preponderate against the trial court's decision rejecting HCR's waiver argument. The trial court did not err in granting summary judgment in favor of the estate on the breach of contract claim.

II. Intentional interference with a business relationship.

Horse Creek next asserts that the trial court erred in granting summary judgment in the estate's favor on HCR's counterclaim for intentional interference with a business relationship.

In *Trau-Med of America, Inc. v. Allstate Insurance Co.*, 71 S.W.3d 691, 701 (Tenn. 2002), our Supreme Court held that liability should be imposed for intentional interference with a business relationship where the plaintiff can prove the following elements:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means, *see, e.g., Top Serv. Body Shop* [*Inc. v. Allstate Ins. Co.*], 582 P.2d [1365,] 1371 [(Ore. 1978)]; and finally, (5) damages resulting from the tortious interference.

(Footnotes and emphasis omitted).

The estate filed a motion for summary judgment regarding HCR's claim for intentional interference with a business relationship. A hearing was held on the estate's motion for summary judgment on April 16, 2018. Horse Creek filed a response to the

---

[2] Moreover, a party's inaction alone is not enough to constitute proof of waiver; rather, the waiving party must generally have allowed the other party to take action to the other party's detriment. *See, e.g.*, *White v. Empire Express, Inc.*, 395 S.W.3d 696, 716-17 (Tenn. Ct. App. 2012) (holding that hauling and leasing company waived right to assert truck driver was barred from recovery on breach of contract claim where the company failed to assert multiple events of default and allowed the truck driver to accrue more and more debt); *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 816 (Tenn. Ct. App. 2009) (holding that GGAT waived its right to assert Madden Phillips's wrongful suspension of contract performance as a material breach "[b]y allowing Madden Phillips to complete ninety percent of the project [much of it after resumption of performance] without further objection."). In this case, there is no evidence that HCR took any action to its detriment by being allowed to provide weight summaries for some period of time before being asked for weight tickets.

motion and to the estate's statement of material facts on April 23, 2018, a week after the hearing.

In an order entered on June 8, 2018, the trial court granted the estate's motion for summary judgment on HCR's counterclaim for intentional interference with a business relationship. The court noted that the estate had complied with Tenn. R. Civ. P. 56.03, but HCR had not: "The response filed after the hearing did not comply with the requirements of Tenn. R. Civ. P. 56.03." The court also found that HCR's responses failed to comply with Tenn. R. Civ. P. 56.06, which requires a response to "set forth specific facts showing that there is a genuine issue for trial." The trial court stated that, "neither in oral argument nor its late-filed responses" had HCR "pointed to anything in the record which disputes Plaintiff's proposed undisputed facts."

The trial court found the following facts to be undisputed under Tenn. R. Civ. P. 56:

1. Defendant does not know the identity of its customers with whom Defendant alleges Plaintiff or her agents interfered in its business relationships.
2. Defendant does not know the dates, times, or identities of its customers who Defendant alleges "were stopped by Susan Knight or Butch Knight and were told they did not trust the people at Horse Creek Rock, Inc., and for the customers not to do business with them."
3. Defendant does not know the identity of its customer who it alleges as follows: "Susan Knight stopped one of Horse Creek Rock's customers and asked the customer where he was going with his load, if the load was weighed, if he was going to pay cash, if he had a ticket and then she asked the customer to pay her for the load. Susan Knight told the customer that Seth was sneaky and dishonest and that he should not do business with Seth Smith. Susan Knight went on to say that she was going to kick them out and bring in some real producers."

Based upon these undisputed facts, the trial court concluded that there were no genuine issues of material fact with respect to HCR's claim and that HCR's evidence was "insufficient to support its claim." Horse Creek had "failed to identify in the record the identity of any person who authored the handwritten document attached to the Counter-Complaint" or the identities of any customers involved in the estate's alleged attempts to interfere with HCR's business relationship. The trial court properly held that the estate was entitled to judgment as a matter of law.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Horse Creek Rock, Inc., for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE